**Judy Danelle Snyder, OSB No. 732834**
E-mail: judy@jdsnyder.com
**Holly Lloyd, OSB No. 942979**
E-mail: holly@jdsnyder.com
LAW OFFICES OF JUDY SNYDER
1000 S.W. Broadway, Suite 2400
Portland, OR 97205
Telephone: (503) 228-5027
Facsimile: (503) 241-2249

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JENNIFER BACON,<br><br>              Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF HUMAN SERVICES, a subdivision of the State of Oregon, and SONYA BUCHHOLTZ, an Individual,<br><br>              Defendants. | Case No.  3:18-cv-01925-YY<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

PAGE i - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.    Ms. Bacon's DHS Employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       B.    Child Protective Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       C.    Ms. Bacon's Report of Illegal Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       D.    Ms. Bacon's work environment changed. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       E.    Push to Close Over Due Assessments . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       F.    Ms. Bacon's First Fact Finding - May 26, 2017 . . . . . . . . . . . . . . . . . . . . 10

       G.    Ms. Bacon's Second Fact Finding - August 7, 2017 . . . . . . . . . . . . . . . . . 11

       H.    Ms. Bacon's Termination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.   SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       A.    Timeliness of Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       B.    ORS 659A.199 Retaliation Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

             1.    Ms. Bacon engaged in a protected activity . . . . . . . . . . . . . . . . . . . 15

             2.    Ms. Bacon suffered adverse actions . . . . . . . . . . . . . . . . . . . . . . . . . 15

             3.    Evidence is Sufficient to Show Causation . . . . . . . . . . . . . . . . . . . . 18

             4.    Pretext. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       C.    42 U.S.C. § 1983 Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

             1.    Ms. Buchholtz is a proper defendant . . . . . . . . . . . . . . . . . . . . . . . . . 25

             2.    Ms. Bacon has made a *prima facie* case under § 1983 . . . . . . . . . . . . 26

                   a.    Ms. Bacon engaged in Protected Speech . . . . . . . . . . . . . . . . 26

                   b.    Ms. Bacon suffered Adverse Action. . . . . . . . . . . . . . . . . . . . 27

                   c.    Substantial or Motivating Factor. . . . . . . . . . . . . . . . . . . . . . . 28

PAGE ii - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
Fax (503) 241-2249

       D.     OFLA Retaliation Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

            1.     Ms. Bacon took protected medical leave . . . . . . . . . . . . . . . . . . . . . . 31

            2.     Ms. Bacon suffered adverse actions . . . . . . . . . . . . . . . . . . . . . . . . . . 31

            3.     The evidence demonstrates causation . . . . . . . . . . . . . . . . . . . . . . . . 32

            4.     The evidence supports pretext . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

  V.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

TABLE OF AUTHORITIES

Federal Cases

*Ambat v. City & County of San Francisco*, 757 F.3d 1017 (9th Cir. 2014) . . . . . . . . . . . . . . . 12

*Anderson v. Central Point School District*, 746 F.2d 505 (9th Cir. 1984) . . . . . . . . . . . . . . . 27

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654 (9th Cir. 2002) . . . . . . . . . . . . 13

*Atwood v. Oregon Dept. of Transp.*, 2008 WL 803020 (D.Or. Mar. 20, 2008) . . . . . . . . . . . 14

*Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . 31

*Bell v. Clackamas  Cnty.*, 341 F.3d 858 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Brunozzi v. Cable Communications, Inc.*, 851 F.3d 990 (9th Cir. 2017) . . . . . . . . . . . . . . . . 15

*Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006). . . . . . . . . . . . . . . . . . . . . . 16

*Carpinteria Valley Farms, Ltd. v. County of Santa Barbara,* 344 F.3d 822 (9th Cir. 2003) . . . . 15

*Castillo v. Dominguez*, 120 Fed.Appx. 54 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Chuang v. University of California Davis, Bd. Of Trustees,*
225 F.3d 1115 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16, 22, 23

*Clark County School Dist. v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508,
149 L.Ed.2d 509 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090 (9th Cir. 2005) . . . . . . . . . . . . . . . . . 13, 22

*Connick v. Myers*, 461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003) . . . . . . . . . . . . . . . . . 19, 26-28, 30

*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . 22

*Dominguez–Curry v.  Nevada Trans. Dept.*, 424 F.3d 1027 (9th Cir. 2005) . . . . . . . . . . . . . . 23

*Earl v. Nielsen Media Research, Inc.* 658 F.3d 1108 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . 22

*Emeldi v. Univ. of Oregon*, 673 F3d 1218 (9th Cir. 2012),
*republished as amended* at 698 F3d 715 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
Fax (503) 241-2249

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Foraker v. Apollo Grp. Inc.*, 427 F.Supp.2d 936 (D. Az. 2006) . . . . . . . . . . . . . . . . . . . . . . 32

*Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951,126 S.Ct. (2005) . . . . . . . . . . . . . . . . . 26

*Godwin v. Hunt Wesson*, 150 F.3d 1217 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Goldsby v. Safeway Inc.*, 3:16-CV-02056-HZ, 2018 WL 297583 (D.Or. Jan 4, 2018) . . . . . . . 33

*Hafer v. Melo*, 502 U.S. 21 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . 19

*Jansen v. Deschutes Cty.*, 6:17-CV-01276-MK, 2019 WL 7476690 (D.Or. Sept. 30, 2019),
*report and recommendation adopted*, 6:17-CV-1276-MK, 2020 WL 42463
(D.Or. Jan 3, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Keyser v. Sacramento City Unified School District*, 265 F.3d 741 (9th Cir. 2001). . . . . . . . . . 29

*Leinenbach v. Washington Cty., Oregon,* 3:17-CV-01703-HZ, 2018 WL 6531646
(D.Or. Dec. 11, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Lowe v. Monrovia*, 775 F.2d 998 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Lyons v. England*, 307 F.3d 1092 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lytle v. Household Mfg., Inc.*, 494 U.S. 545 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Marable v. Nicthman*, 511 F.3d 924 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*McDonnell Douglas Corp. v.  Green*, 411 U.S. 792 (1973). . . . . . . . . . . . . . . . . . . . . . . . 22, 31

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) . . . . . . . . . . . . . . . . . 14, 15, 17, 31

*Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001). . . . . . . . . . . . . . . . . . . . . 18

*Perez v. U.S. Postal Serv.,* 76 F. Supp. 3d 1168 (W.D. Wash. 2015) . . . . . . . . . . . . . . . . . . . 20

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Poland v. Chertoff*, 494 F.3d 1174 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Porter v. Cal. Dep't of Corrs.*, 383 F.3d 1018 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Price v. Akaka*, 928 F.2d 824 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
Fax (503) 241-2249

*Pullom v. U.S. Bakery*, 477 F.Supp.2d 1093 (D.Or. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ray v. Henderson,* 217 F.3d 1234 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 31

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) . . . . . . . . . . . . . . 12, 22

*Rutan v. Republican Party*, 497 U.S. 62 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406 (9th Cir. 1996),
*cert. denied*, 519 U.S. 927 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*SEC v. M&A West, Inc.*, 538 F.2d 1043 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Shepard v. City of Portland,* 829 F.Supp.2d 940 (D.Or.2011) . . . . . . . . . . . . . . . . . . . . . . . . 32

*Shoshone–Bannock Tribes v. Fish & Game Commission*, 42 F.3d 1278
(9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Sosa v. Hiraoka*, 920 F.3d 1451 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 32

*Wallis v. JR. Simplot Co.*, 26 F.3d 885 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Weil v. Citizens Telecom. Serv. Co., LLC*, 922 F.3d 993 (9th Cir. 2019) . . . . . . . . . . . . . . . 13

*Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276 (9th Cir. 2001) . . . . . . . . . 22

*Wood v. Dollar Rent–A–Car Sys., Inc.*, 128 Fed.Appx. 620 (9th Cir. 2005) . . . . . . . . . . . . . 19

*Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 32


Federal Statutes

29 U.S.C. § 2615(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14


State Cases

*Demaray v. State , Dept. Of Env. Quality*, 127 Or.App. 494, 873 P.2d 403 (1994) . . . . . . . . 30

*Griffin By & Through Stanley v. Tri-Cty. Metro. Transp. Dist. of Oregon*,
112 Or. App. 575, 831 P.2d 42, 46 (1992), amended (June 2, 1992),
*aff'd in part, rev'd in part*, 318 Or. 500, 870 P.2d 808 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Steele v. Mayoral*, 231 Or.App. 603 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

PAGE vi - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

---

State Statutes

ORS 659A.030 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ORS 659A.186(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ORS 659A.199 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13, 16, 29, 30

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
FAX (503) 241-2249

## I.     INTRODUCTION

Ms. Bacon asserts Four Claims for Relief against her former employer, Oregon Department of Human Services, and her former supervisor, Sonya Buchholtz, for retaliation in violation of ORS 659A.199 (First and Fourth Claims), 42 U.S.C. § 1983 (Third Claim), and for using protected medical leave (Second Claim). Defendants' Motion for Summary Judgment must be denied because there are numerous factual disputes and credibility determinations that must be made by a jury.

On April 17, 2020, this firm substituted as counsel of record for Ms. Bacon.  On April 22, 2020, attorneys for defendants advised plaintiff's new counsel that defendants would be producing or re-producing approximately 4000 documents of comprehensive electronic discovery due to an issue with an outside vendor.  On May 4, 2020, defendants produced the additional documents. Plaintiff's counsel has been unable to review all of the documents, as she was responding to the present motion.  Plaintiff may at a later time request to supplement her response to defendants' motion based on newly produced discovery.  (Lloyd Dec., ¶ )

## II.     FACTUAL BACKGROUND

### A.     Ms. Bacon's DHS Employment

Ms. Bacon began working for DHS in 2012 as a volunteer, then was hired into a temporary position in the Beaverton branch in July of 2013.  (Declaration of Jennifer Bacon ("Bacon Dec."), ¶ 2).  In September of 2013, Ms. Bacon was hired as a full-time Child Protective Services ("CPS") worker at the Hillsboro branch.  (*Id.*).  In February of 2016, Ms. Bacon transferred to the Beaverton branch where she was supervised by Michael Cleary. (*Id.*; Deposition of Michael Cleary[1] ("Cleary Dep.") 32:10-33:25).  In July of 2016, Ms. Buchholtz began supervising Ms. Bacon. (Buchholtz Dep. 118:9-11; Bacon Dec., ¶ 2).

\\

---

[1]Deposition transcripts are attached as exhibits to the Declaration of Holly Lloyd, but referred to throughout by deponent name for clarity.

PAGE 1 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

B.    **Child Protective Services**

A CPS caseworker is responsible for investigating and assessing reports of child abuse and neglect. (Bacon Dec., ¶ 3).  For each case assigned, CPS caseworkers complete a case assessment in the OR-Kids system. (*Id.*).  During Ms. Bacon's employment, a CPS assessment was assigned as either traditional response or alternative response, requiring an initial contact within 24 hours or 5 days of the date of assignment.[2] (Buchholtz Dep. 24:22-25:22).

CPS casework moves very quickly and a caseworker must accomplish many tasks in a short period of time, while juggling many cases at once. (Bacon Dec., ¶ 3).  When assigned a new case, Ms. Bacon reviewed the individual's history, including any prior assessment activity, and where possible, spoke to any prior caseworker and involved law enforcement officer. (*Id.*).  Ms. Bacon would then attempt to make contacts as required, either within 24 hours or within 5 days. (*Id.*).  Making a timely initial contact was not always possible, especially when CPS workers had many cases. (*Id.*; Deposition of Katie Jenkins ("Jenkins Dep.") 11:14-17; Declaration of JD Southall ("Southall Dec."), ¶ 5).  All CPS workers struggle with timelines. (Cleary Dep. 12:13-22).  As caseloads increase, it is difficult to meet initial timelines. (Jenkins Dep. 8:20-9:9).  The environment was very stressful for caseworkers and supervisors, and the work is hard and demanding.  (Jenkins Dep. 23:18-20; Deposition of Margaret Taylor ("Taylor Dep.") 16:11-14).  It was not uncommon for caseworkers to cry at work. (Taylor Dep. 16:15-20; Deposition of Nicole Cunningham ("Cunningham Dep.") 27:14-22).

CPS workers were expected to staff cases with their supervisor when initial contacts were not made or there were delays in making initial contacts. (Buchholtz Dep. 104:1-106:25). Staffing cases can occur through phone calls, text message, instant messages or emails at any point in the case, including when the caseworker had difficulty making initial contacts. (Buchholtz Dep. 31:6-33:6).  Staffing cases was not always possible because supervisors at times were unavailable,

_____

[2]Response times have now changed.  (Buchholtz Dep. 56:8-22).

PAGE 2 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

including for communications about difficulties in meeting initial contact response times. (Jenkins Dep. 9:10-10:2, 12:22-24; Cunningham Dep. 14:8-22, 15:5-12, 16:18-17:2; Taylor Dep. 24:7-9). Being unable to obtain assistance from supervisors created problems for caseworkers, especially when an urgent matter arose. (Cunningham Dep. 22:1-17). When supervisors were not available, CPS workers talked to their coworkers for advice. (Cunningham Dep. 16:18-17:2).

Assignments involving unsafe conditions for children resulted in juvenile court intervention. (Bacon Dec., ¶ 4). Court cases require an increased involvement of the CPS worker to prepare petitions, make multiple court appearances, and coordinate services with other providers, all of which took a substantial amount of time. (*Id*.). A court case adds to a caseworker's workload and can increase the amount of work and time required by more than double. (Cunningham Dep. 11:24-12:17; Buchholtz Dep. 50:6 -51:19; Southall Dec., ¶ 4). Because of the work involved, court cases can make it more difficult to prioritize other cases. (Cunningham Dep. 12:2-17; Bacon Dec., ¶ 4). Four court cases would interfere with a caseworker's ability to be timely on open assessments, and eight court cases at once would be very difficult to manage. (Cunningham Dep. 12:18-25 and 13:1-8). The Fall of 2016 was very busy and chaotic. (Southall Dec., ¶ 3). The sheer volume of work caused multiple caseworkers to fall behind. (See, Sonya Buchholtz Dec., ECF 32, ¶ 6). It was not uncommon for caseworkers to fail to meet deadlines on cases. (Cleary Dep. 12:13-13:10). In May 2017, Ms. Buchholtz required mandatory overtime for caseworkers who had open assessment longer than a certain period of time. (Bacon Dec., ¶ 29, Ex.15).

A recent state audit of CPS found that caseloads were three to four times higher than optimal, and high caseloads compromise the ability of even the most experienced caseworkers to effectively serve Oregon's children. (Deposition of Bonnie Crawford ("Crawford Dep.") 26:1-24; Lloyd Dec., Ex. 10, pp. 5-6).

### C.    Ms. Bacon's Report of Illegal Activity

In August of 2016, while working on an assessment that involved prior activity by caseworker Miguel Fuentes, Ms. Bacon became concerned, because Mr. Fuentes had closed

PAGE 3 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

assessments that involved a dangerous male. (Bacon Dec., ¶ 5).  Ms. Bacon became concerned that Mr. Fuentes had falsified assessment activities. (*Id*).  Around that same time, while completing an assessment on a companion case assigned to caseworker Jonica Durbin, Ms. Bacon saw that Ms. Durbin had reported an initial contact that Ms. Bacon knew was wrong, but put Ms. Durbin's initial contact within the required 5 days. (Bacon Dec., ¶ 6, ; Ex.2, pp. 2, 5).  Ms. Bacon believed that Ms. Durbin had entered the wrong date due to the tremendous pressure to complete assessments in a timely manner. (*Id*.).

In August of 2016, Ms. Bacon met privately with Ms. Buchholtz and reported her concerns that assessments by Mr. Fuentes and Ms. Durbin had been falsified, and that children were placed at risk as a result of Mr. Fuentes' conduct. (Bacon Dec. ¶ 7).  In response, Ms. Buchholtz stated, "What is it that I'm supposed to think about Jennifer Bacon right now?  I believe you are trying to stir up controversy within the unit, and you are not to discuss this with anyone else outside of this room." (*Id*.).  After Ms. Bacon's report, Ms. Durbin changed the date in the assessment to the correct date which put her initial contact outside the 5-day period. (Bacon Dec., ¶ 6, Ex. 2, p. 5; see Buchholtz Dec., Att. 3, p. 27 (ECF 32, p. 60)).

In September of 2016, Ms. Bacon spoke to Ms. Buchholtz again about the wrongdoing she had reported that was leaving children unsafe, and Ms. Buchholtz's statement that she was trying to stir up controversy. (Bacon Dec., ¶ 8).  Ms. Buchholtz responded, "Yes, that was a very bold statement" and ended the meeting. (*Id*.).  After that conversation, Ms. Bacon told Detective Charles "Chuck" Anderson that assessments completed by Mr. Fuentes and Ms. Durbin had been falsified, and she was concerned that Ms. Buchholtz would now be coming after Ms. Bacon. (*Id.*).

### D.    Ms. Bacon's work environment changed

For a period of time, Ms. Buchholtz agreed to meet with Ms. Bacon every other week for staffing cases, (Buchholtz 359:19-25), but after Ms. Bacon's report in August 2016, Ms. Buchholtz began cancelling or not appearing for these scheduled meetings with Ms. Bacon. (Bacon Dec. ¶ 9).  Ms. Buchholtz also began missing case meetings to transfer a case from CPS to Permanency.

PAGE 4 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(*Id.*)  Ms. Buchholtz became very short and curt with Ms. Bacon when she tried to discuss cases, and looked exasperated when Ms. Bacon approached her. (*Id.*).  Ms. Buchholtz was gruff when Ms. Bacon asked for help prioritizing her caseload, and instead of offering help, would tell Ms. Bacon to figure it out. (Southall Dec., ¶ 8).  Ms. Bacon did not get the assistance that other caseworkers received from Ms. Buchholtz. (*Id.*).

On October 13, 2016, Ms. Buchholtz pulled Ms. Bacon into a small conference room and stood over her, while pointing her finger, and said in a hostile tone that Ms. Bacon had been implicated in a case as having a romantic relationship with the subject, Officer Mike Irvine, it had put the branch in a very uncomfortable position, and she was required to sign a conflict of interest form to disclose the nature of her relationship with Officer Irvine. (Bacon Dec., ¶ 10; Buchholtz Dep. 125:17-129:8).  Ms. Bacon was shocked and upset by the allegations and started to cry. (Bacon Dec., ¶ 10).  Ms. Buchholtz insisted she sign a conflict of interest form and implied that Ms. Bacon had not told the truth when asked about taking the case. (*Id.*)  Ms. Bacon explained that when she had been told about the case, she was asked if she knew an Officer Irwin, not Irvine, and she stated that she could not accept the case because she had partnered with Officer Irwin on prior cases. (*Id.*).  The meeting was the first time she had learned that the case involved Officer Irvine. She knew him from several years earlier. (*Id.*).  Ms. Bacon stated that her relationship with Officer Irvine was not romantic, that she had an unpleasant experience with him, and wanted nothing to do with him. (*Id.*).  She questioned why the case had been assigned to her coworker if she had been implicated. (*Id.*).  Ms. Buchholtz pointed her finger at Ms. Bacon and said Officer Irvine had implicated her, and told her she had to sign the form, but Ms. Bacon was too upset to sign anything. (*Id.*).  Ms. Buchholtz said, "I don't know what to do with you" and left. (*Id.*).  Ms. Bacon later signed a conflict of interest form. (*Id.,* Ex. 3).

In October of 2016, Ms. Bacon received 12 new assignments and in November she received 12 new assignments, in addition to her open assessments and court cases. (Bacon Dec., ¶ 11).  Ms. Bacon often had difficulty staffing her cases with Ms. Buchholtz, and her calls,

PAGE 5 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

messages and pages for assistance went unanswered. (*Id.*).  Supervisors assign cases to caseworkers and monitor their caseloads. (Buchholtz Dep. 51:20-53:11).

Ms. Bacon was scheduled for medical leave from December 1, 2016 through January 3, 2017.  Ms. Buchholtz was responsible for reassigning Ms. Bacon's cases or assigning someone to cover Ms. Bacon's cases during her leave. (Buchholtz Dep. 321:18-323:5; Bacon Dec., ¶ 12). Ms. Buchholtz failed to review Ms. Bacon's cases before her medical leave, and does not recall if she assigned other caseworkers to cover Ms. Bacon's cases.  (Buchholtz Dep. 323:6-16, 326:4-9). Ms. Buchholtz failed to meet with Ms. Bacon about her cases, and ignored her requests for staffing, so Ms. Bacon asked  coworker JD Southall to watch some of her cases and make initial contacts. (Bacon Dec. ¶ 12).

During her medical leave, Ms. Bacon received calls and messages from safety service providers on one of her complicated cases. (Bacon Dec., ¶ 12).  The safety service providers had contacted Ms. Bacon because they could not get responses from Ms. Buchholtz. (*Id.*).  Ms. Bacon returned to work on January 4, 2017, and found that Ms. Buchholtz had not done anything on any of Ms. Bacon's assigned cases while she was on leave. (*Id.*).

In January, Ms. Bacon received 9 new assignments and had two court cases. (Buchholtz Dep. 363:18-364:4; Lloyd Ex. 11, p. 2).  In February 2017, Ms. Bacon received 9 new assignments, and had 4 court cases. (Buchholtz Dep. 365:4-10).  Ms. Buchholtz is responsible for assigning cases to Ms. Bacon. (Buchholtz Dep. 52:10-53:11).

On January 19, 2017, Ms. Buchholtz contacted Human Resources about a possible fact finding on Ms. Bacon for alleged performance concerns, and forwarded her emails with Ms. Bacon regarding the October conflict of interest issue. (Lloyd Declaration, Ex. 12).

On January 23, 2017, Ms. Buchholtz spoke to Ms. Bacon and accused her of not staying in her lane and being in the middle of conflicts and drama. (Bacon Dec., ¶ 13,  Ex. 5, pp. 2-3; Buchholtz Dep. 151:5-153:2).  Ms. Buchholtz's had received two calls from law enforcement officers about Ms. Bacon. (Bacon Dec., ¶ 13).  Ms. Bacon explained that when the officers called

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
Fax (503) 241-2249

Ms. Buchholtz, they had not been provided with the necessary background information.  She spoke to one sergeant and cleared up the misunderstanding and he apologized for calling her supervisor. (*Id*.).  Ms. Bacon sought law enforcement assistance about how to make an initial contact at a home which had two dangerous felons. (*Id*., Ex. 4, p. 5).  Ms. Buchholtz did not talk to the officers to follow-up or clarify the situation.  (Buchholtz Dep. 151:5-153:2).

Ms. Bacon and Ms. Buchholtz exchanged emails the next day about their conversation. (*Id*., ¶ 14, Ex.5).  It was clear to Ms. Bacon that Ms. Buchholtz was building a case against her.  (*Id*. ¶ 14).  The next day, Ms. Buchholtz contacted HR again, and solicited information about Ms. Bacon from a former supervisor, Heather Kitto. (Lloyd Dec., Exs. 13, 14).

In January and February, Ms. Bacon had six court cases with nine petitions and numerous hearings. (Buchholtz Dep. 187:5-11, Lloyd Dec., Ex. 11, p. 2; Bacon Dec., ¶ 15, Ex. 6).  Nine petitions and six court cases in a three-month period is a heavy load. (Buchholtz Dep. 188:16-19).  On February 27, 2017, Ms. Buchholtz reassigned a handful of Ms. Bacon's cases where initial contacts had been made, because the volume of her legal cases had decreased her ability to attend to other cases. (Bacon Dec., ¶ 15, Ex. 7).

In March 2017, Ms. Bacon received 12 new assignments, and in April 2017, Ms. Bacon received 7 new assignments.  These new cases were in addition to Ms. Bacon's open cases, many of which were still open from prior to her medical leave in December of 2016. (Buchholtz Dep. 362:20-363:1, 365:18-20; Lloyd Dec.,. Ex. 11, p. 2).

In March 2017, Ms. Buchholtz directed Ms. Bacon to transfer the Osman case which she had been assigned in January of 2017. (Bacon Dec., ¶ 17).  When she was assigned the case, supervisor Dominic Cananzaro stated he had missed the medical when he had the case. (*Id*.).  The child was medically fragile.  Ms. Bacon had done a lot of work to set up a medical team and had not concluded her investigation, so asked that Ms. Buchholtz transfer other cases instead. (*Id*.).  Ms. Buchholtz insisted she transfer the Osman case. (*Id*.).  Ms. Buchholtz attended the  transfer case meeting on March 15, 2017, which is only one of two transfer case meetings she attended

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
Fax (503) 241-2249

with Ms. Bacon after her reports. (*Id.*). During the meeting, as Ms. Bacon was explaining the child's complex medical history, Ms. Buchholtz interrupted and said "the case is in very capable hands now." (*Id.*). Ms. Bacon was taken aback by Ms. Buchholtz tone. She explained she wanted to convey all the complex medical information. (*Id.*) Ms. Bacon was embarrassed by the way Ms. Buchholtz talked to her in front of others. (*Id.*)

On March 31, 2017, Ms. Buchholtz told Ms. Bacon that they needed to meet with branch manager Kim Keller. (Bacon Dec., ¶ 21). Ms. Bacon did not want to meet with them because she knew that Ms. Buchholtz was building a case against her. Ms. Buchholtz insisted, and they met with Ms. Keller on April 4, 2017. (*Id.* ). In the meeting, Ms. Bacon stated that there were no issues and everything was fine. (*Id.*). Ms. Bacon knew that she was on Ms. Buchholtz's radar and could not afford to lose her job. (*Id.*). The next day Ms. Bacon met individually with Ms. Keller after Ms. Keller's invitation during the meeting to feel free to talk to her anytime. (*Id.*). Ms. Bacon reported that she had experienced difficulties with Ms. Buchholtz since August of 2016 when she had reported that other caseworkers had falsified records. (*Id.*).

E.    **Push to Close Over Due Assessments**

Ms. Bacon continued to work on her assessments, court cases, and new case assignments as there was a push in the unit to close overdue assessments, especially those open longer than 150 days. (Bacon Dec., ¶ 18). On March 1, 2017, Ms. Bacon asked Ms. Buchholtz about the goal to get cases under 150 days by March 3, 2017 and Ms. Buchholtz replied that her court assessments were needed first. (*Id.*, Ex. 8). On March 23, 2017, Ms. Buchholtz emailed the CPS team regarding making initial contacts 95% of the time within the assigned time frame. At that time, Ms. Buchholtz's unit was making initial contacts within the assigned time frame 44% of the time. (Bacon Dec., ¶ 20, Ex. 10).

On April 4, 2017, Ms. Buchholtz emailed the CPS unit about the over due assessment plan, with the goal to get all assessments to 90 days or below by June 30, 2017. (Bacon Dec., ¶ 22, Ex.11, pp. 2-3). To meet the goals, the unit was hiring temporary workers, instituting required quiet

PAGE 8 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

time each morning, protecting time for CPS workers, and requiring mandatory overtime on weekends. (*Id.*).  It was not unusual for caseworkers to have open assessments beyond 60 days, or even beyond 150 days. (Deposition of Tilynn Wilson 24:23-25:9; Cunningham Dep. 10:8-19). On April 4, 2017, Ms. Buchholtz emailed Ms. Bacon about placing her on protected time the week of April 24 through 28, 2017, meaning she would not receive any new case assignments that week. (Bacon Dec., ¶ 23, Ex. 12).

By April 10, 2017, Ms. Bacon had 29 assessments to complete to meet the goal of getting all assessments below the 150 day mark by April 30, 2017, which she did not believe she could accomplish, but would try her best. (Bacon Dec., ¶ 25, Ex.11).  Despite the number of assigned cases and court cases, the weekly open assessment detail report showed Ms. Bacon was in the middle of the pack for overdue assessments. (Bacon Dec. ¶ 25).  Ms. Bacon was on a protected week from April 24 - 28, 2017 to provide her time to complete overdue assessments, but she received at least one new case assignment that week. (Buchholtz Dep. 310:17-311:25; Bacon Dec., ¶ 23).  In addition, Ms. Bacon also had court hearings on April 27 and 28 and a doctor's appointment on the 28th, which reduced the amount of time she had to work on her assessments. (Bacon Dec., Ex. 12).

On May 1, 2017, Ms. Buchholtz emailed Ms. Bacon that she would be protected that week, and that she expected more than six completed assessments the week before. (Bacon Dec., ¶ 25, Ex. 13, p. 2).   Ms. Bacon responded that she thought she had submitted seven, and had three more ready, but that she was not as productive as she had hoped due to pain in her wrists and hands and her schedule. (*Id.,* Ex. 13, p. 1-2).

On May 1, Ms. Buchholtz emailed her unit about her expectation that they would each enter their attempts at initial contacts within 2 business days of the attempt. (Bacon Dec., ¶ 26; Ex 14). The statewide goal was that  95% of cases would have initial contacts within the timelines, and Ms. Buchholtz's unit was at 45%, while Beaverton as a whole was at 49%. (*Id.*).  Ms. Buchholtz emailed Ms. Bacon separately about some of her overdue assessments, noting some inaccurate entries

PAGE 9 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

in the assessments, and acknowledging that Ms. Bacon's average of 19% for timeliness of initial contacts over the past six months was not accurate. (Bacon Dec., ¶ 27, Ex. 15).

On May 14, 2017, Ms. Buchholtz emailed Ms. Bacon about completing certain assessments that week, which would get her below 180 days and leave her in a position to reach the goal of nothing over 120 days by the end of June. (Bacon Dec., ¶ 28, Ex. 16, pp. 2-3).  Ms. Buchholtz identified cases that needed additional information to be approved for closure. Ms. Bacon responded on May 15, 2017 with more details. (*Id.*).

Ms. Bacon notified Ms. Buchholtz that she was going to be on leave May 17-19, 2017, and shared concerns about assessments that she had not been able to complete due to her caseload. (*Id.,* pp. 1-2).  Ms. Bacon requested to keep some cases open because she was uncomfortable turning in assessments that were not complete. (*Id.*).  Ms. Buchholtz responded to Ms. Bacon's comments on May 16, 2017 with additional questions, and informed her that the assessments would not be kept open. (*Id.*, p. 1).

On May 24, 2017, Ms. Buchholtz emailed the CPS team regarding expectations updates for the over due assessment plan, because although they had made progress, they were "quite a bit away from hitting our ultimate goal of nothing over 90 days by 06/30." (Bacon Dec., ¶ 29, Ex. 17).  The management team was requiring mandatory overtime in June for anyone who had assessments over 150 days. (*Id.*).

F.    Ms. Bacon's First Fact Finding - May 26, 2017

On May 26, 2017, Ms. Bacon was called into a fact finding meeting with Ms. Buchholtz about her attempts to make initial contacts within the required time frames for thirteen cases. (Bacon Dec., ¶ 30).  A potential outcome of a fact finding is discipline. (Buchholtz Dep. 317:18-21). Ms. Bacon provided responses for each case, indicating where she had made attempts at initial contacts within the required time frames. (Bacon Dec., ¶ 30, Ex. 21).  Ms. Bacon also explained her attempts to staff her cases with Ms. Buchholtz or other supervisors, who were not always available. (*Id.*).

PAGE 10 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Ms. Bacon went on medical leave from June 1 through August 26, 2017. (Bacon Dec. ¶ 31). She returned from leave on August 4, 2017. (*Id*.).  On August 7, 2017, Ms. Bacon was assigned a case for immediate response, and while out on that case to make an initial contact, Ms. Buchholtz called her to tell her she was having another fact finding later that week. (Bacon Dec., ¶ 31).

### G.    Ms. Bacon's Second Fact Finding - August 7, 2017

On August 11, 2017, Ms. Bacon was called into a second fact finding with Ms. Buchholtz. (Bacon Dec., ¶ 32).  Ms. Buchholtz questioned Ms. Bacon about one case assigned to Ms. Bacon in January of 2017 for a 24-hour response, with a parent that spoke Farsi. (*Id*.).  Ms. Buchholtz asked Ms. Bacon how she made initial contact on the case.  (*Id*.)  Ms. Bacon explained that she had gone out with caseworker JD Southall to make initial contact because he spoke Farsi. (*Id*.). She had called the mother, but her phone was not in service. (*Id*)  Mr. Southall called in and paged for a supervisor because neither he nor Ms. Bacon could reach the mother, but they got no response.  (*Id*.; Southall Dec., ¶ 6).  When they could not reach a supervisor or the mother, who they learned spoke English, they went to the child's school to talk to the child. (*Id*.).

After the second fact-finding, Ms. Bacon continued to receive case assignments, including one that was already overdue for the initial contact. (Bacon Dec., ¶ 33).

### H.    Ms. Bacon's Termination

On August 23, 2017, Ms. Bacon was duty-stationed at home. (Bacon Dec., ¶ 34).  On September 8, 2017, Ms. Bacon received notice of Commencement of the Predismissal Process for just cause. (*Id*., Ex.18).  Ms. Bacon submitted a written response to the pre-dismissal notice with documents to support her response. (*Id*., ¶ 34; Ex. 19).  Ms. Bacon attempted to obtain additional emails and messages to corroborate her assessment activities, but she was unable to obtain them because she was locked out of the system. (Bacon Dec., ¶ 36).  Ms. Bacon also filed an internal discrimination and harassment complaint, which was concluded as unfounded. (*Id*.).        O        n November 3, 2017, Ms. Bacon received notice of her termination. (Bacon Dec., ¶ 36; Ex. 20).  The allegations against Ms. Bacon are identical to those listed in the September 8, 2017 notice. (*Id*.)

PAGE 11 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Ms. Bacon was terminated supposedly for performance, including lack of timely initial contacts, lack of supervisor approval on making case decisions, and, lack of following direction from supervisor, lack of sound professional judgment; as well as, poor judgment and violation of the public trust. (*Id.*, Ex. 20; Buchholtz Dep. 89:6-25, 149:2-151:4).

Ms. Bacon did not have any progressive discipline prior to her May 26, 2017 fact finding, only conversations about work performance. (Bacon Dec., ¶ 38; Buchholtz Dep. 117:4-16).  Ms. Buchholtz decided not to issue a letter of expectation about Ms. Bacon's alleged deficiencies, instead she went right to an investigation/fact finding. (Buchholtz Dep. 114:20-115:8).  When Ms. Bacon went on medical leave in May of 2017, Ms. Buchholtz decided that dismissal was the most appropriate outcome. (*Id.*, 115:19-25).  The second fact finding contributed to the decision about moving to dismissal, and the decision to terminate was made after the August fact finding. (*Id.* 116:1-117:7).  No harm resulted to any of the children as a result of delayed contacts.  (*Id.* 135:1-6).

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Because summary judgment is a "drastic devise," cutting off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any triable issue of material fact.  *Ambat v. City & County of San Francisco*, 757 F.3d 1017, 1031 (9th  2014).  A fact is "material" if it might affect the outcome of the case. *Id.* at 248.  An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Id.*  In evaluating a motion for summary judgment, the court must draw all reasonable inferences in favor of the non-moving party, and may neither make credibility determinations nor perform any weighing of the evidence.  *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990); *Reeves v. Sanderson Plumbing Products,*

PAGE 12 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Inc.*, 530 U.S. 133, 150 (2000).

The Ninth Circuit "has set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996), *cert. denied*, 519 U.S. 927 (1996).  It requires little evidence to survive summary judgment in employment cases because the ultimate question is one that can generally be resolved only through a "searching inquiry" of the full record by the factfinder. *Id; Chuang v. University of Calif. Davis, Bd. Of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000).  "The requisite degree of proof necessary to establish a *prima facie* case for [discrimination claims] on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005) (quoting *Wallis v. JR. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)); *see also Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659-60 (9th Cir. 2002).  In deciding motions for summary judgment, "a court must 'zealously guard an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses.'" *Weil v. Citizens Telecom. Serv. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019), citing *McGinest*, 360 F.3d at 1112.  "[V]ery little ... evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a factfinder."  *Schnidrig*, 80 F.3d at 1409 (internal quotation marks and citation omitted).  "[S]ummary judgment is singularly inappropriate where credibility is at issue." *SEC v. M&A West, Inc.*, 538 F.2d 1043, 1054-55 (9th Cir. 2008) (internal citations omitted).

## IV.    ARGUMENT

Defendants' motion for summary judgment should be denied because there are genuine issues of material fact about whether Ms. Bacon was terminated because she reported wrongdoing by other caseworkers, or because she used protected medical leave.  Although the First Amended Complaint is not a model of clarity, Ms. Bacon asserts three separate theories of retaliation:  1) retaliation in violation of ORS 659A.199 (First and Fourth Claims for Relief); 2)  First Amendment

PAGE 13 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

free speech retaliation under 42 U.S.C. § 1983 (Third Claim for Relief); and  3) retaliation for plaintiff's use of OFLA leave (Second Claim for Relief).

### A.    Timeliness of Claims

Ms. Bacon does not dispute the timing of her termination, or the dates of her OTCA notice and date of her lawsuit.  Defendants acknowledge that Ms. Bacon's November 3, 2017 termination is timely.  Ms. Bacon has also asserted that she was subjected to a hostile work environment in retaliation for her protected activities, including her reports of wrongdoing and because she used protected medical leave. (See First Amended Complaint, ¶¶ 12, 14, 19, 21, 24, 44, 46).

A hostile work environment claim is timely as long as one act contributing to the claim occurs within the filing period; the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).  "Under the continuing violation doctrine, a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period."  *Sosa v. Hiraoka*, 920 F.3d 1451, 1455 (9th Cir.1990) (citation and internal question marks omitted).  This is true for the one-year statute of limitations as well as the OTCA notice period.

 "Oregon courts have approved of the use of the continuing tort theory in the context of employment discrimination cases."  *Atwood v. Oregon Dept. of Transp.*, 2008 WL 803020 at *13 (D. Or. Mar. 20, 2008) (additional citation omitted). "Indeed, the continuing violation doctrine under federal law appears perfectly congruous with the lines drawn between continuous torts and separate discrete acts under Oregon law." *Id*.  To the extent that the alleged acts are part of Ms. Bacon's hostile work environment claim, they are not barred by the OTCA.  *Jansen v. Deschutes Cty.*, 6:17-CV-01276-MK, 2019 WL 7476690, at *13 (D.Or. Sept. 30, 2019), *report and recommendation adopted*, 6:17-CV-1276-MK, 2020 WL 42463 (D. Or. Jan 3, 2020).

Even if any of the adverse actions were not actionable as beyond the statute of limitations, it is well-settled that evidence of the time-barred acts may be considered as proof of timely claims: "[T]he statute [does not] bar an employee from using the prior acts as background evidence in

PAGE 14 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

support of a timely claim." *Morgan*, 536 U.S. at 113-114.  Conduct outside the statute of limitations is evidence of a pattern of behavior toward plaintiff which is relevant to actionable claims, and should be admissible as evidence of the defendants' intent and motivation.  *See, Carpinteria Valley Farms, Ltd. v. County of Santa Barbara,* 344 F.3d 822, 829 (9th Cir. 2003) (extending the *Morgan* ruling to §1983 claims); *Lyons v. England*, 307 F.3d 1092, 1108, 1110–11 (9th Cir. 2002).

## B.    ORS 659A.199 Retaliation Claim

Ms. Bacon has adduced evidence which demonstrates that she was subjected to a hostile work environment in retaliation for her reports of unlawful activity that culminated in her termination. As a preliminary matter, Title VII and Oregon law discrimination claims are analyzed with the same standard. *Pullom v. U.S. Bakery*, 477 F.Supp.2d 1093, 1100 (D.Or. 2007) ("Because ORS 659A.030 is modeled after Title VII, plaintiff's state law discrimination claims can be analyzed together with his federal discrimination claims.").  To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision. *Brunozzi v. Cable Communications, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017).

### 1.    Ms. Bacon engaged in a protected activity

Defendants do not dispute that Ms. Bacon engaged in a protected activity, although there is a dispute about when Ms. Bacon made her protected reports.  Ms. Bacon reported the misconduct of Mr. Fuentes and Ms. Durbin to Ms. Buchholtz in August of 2016 (Bacon Dec., ¶ 7), and reported Mr. Fuentes' misconduct to Detective Anderson early in his investigation of Mr. Fuentes. (Deposition of Charles Anderson ("Anderson Dep.") 47:10-49:23).  Ms. Bacon further reported Ms. Durbin and Mr. Fuentes again in April of 2017 to branch manager Kim Keller. (Bacon Dec., ¶ 21).

### 2.    Ms. Bacon suffered adverse actions

While Ms. Bacon's termination was the ultimate result of the retaliation against her, it was

PAGE 15 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

not the only adverse action at issue, and defendants do not cite any case law to support the assertion that "harassment" is not actionable under ORS 659A.199. (See Defs. Motion, at 13). A hostile work environment, which does not generally arise from a single act but from a series of actions, is actionable as unlawful retaliation. *Ray v. Henderson*, 217 F3d 1234, 1245 (9th Cir. 2000) ("Harassment as retaliation for engaging in protected activity... is the paradigm of 'adverse treatment that is based on retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.'").

Defendants incorrectly rely upon the "adverse action" standard used in discrimination claims, which defines adverse actions as those that "materially affect the compensation, terms, conditions, or privileges of employment." *Chuang v. University of California Davis, Bd. Of Trustees,* 225 F.3d 1115, 1126 (9th Cir. 2000); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). The definition of adverse action for a *retaliation* claim is broader and is defined as an action that "is reasonably likely to deter employees from engaging in protected activity." *Ray,* 217 F.3d at 1243; *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (a challenged action is materially adverse if "it might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' "). An adverse action need not affect the terms or conditions of employment. *Burlington,* at 64. It must, however, be material. *Steele v. Mayoral*, 231 Or.App. 603, 616-17 (2009). Materially adverse actions are distinct from trivial harms, such as personality conflicts or snubbing by coworkers and supervisors; typically, "petty slights, minor annoyances, and simple lack of good manners" will not deter complaints by victims of discrimination. *Id.*, citing *Burlington*, 548 U.S. at 68. In determining whether a harm is trivial or material, context matters:

> "the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint. By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id.* at 69–70, 126 S.Ct. 2405.

*Steele,* 231 Or.App. at 616-17.

PAGE 16 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

"When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). The determination of whether an actionable hostile work environment claim exists requires an examination of "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morgan*, 536 U.S. at 103.  The standard of whether a conduct is severe or pervasive enough is "one that a reasonable person would find hostile or abusive - as well as the victim's subjective perception that the environment is abusive." *Harris*, 510 U.S. at 368; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) ("[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.").

Ms. Bacon has demonstrated that she was subjected to a hostile work environment following her reports in August and September of 2016.  When Ms. Bacon reported the falsified CPS Assessments to Ms. Buchholtz, she responded,  "What is it that I'm supposed to think about Jennifer Bacon right now?  I believe you are trying to stir up controversy within the unit, and you are not to discuss this with anyone else outside of this room." (Bacon Dec., ¶ 7).

A short time later, Ms. Buchholtz intimidated Ms. Bacon in a meeting about a potential conflict of interest, and implied that Ms. Bacon had lied about not knowing Officer Irvine when first asked about the case. (Bacon Dec.¶ 10).

Ms. Buchholtz began missing meetings with Ms. Bacon, did not staff her cases with her prior to Ms. Bacon's medical leave, and did nothing to monitor Ms. Bacon's cases during her medical leave. (Bacon Dec. ¶¶ 11, 12)  She was curt and displayed hostility toward Ms. Bacon after she reported the misconduct.  In January 2017, after Ms. Bacon returned from medical leave, Ms. Buchholtz accused her of being in the middle of conflicts and drama.  At this same time, Ms.

PAGE 17 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Buchholtz contacted HR about a possible fact finding over the Irvine conflict of interest issue, and solicited negative information from Ms. Bacon's former supervisor. (*Id.*, ¶ 13; Lloyd Dec., Exs. 12-14).

In March 2017, Ms. Buchholtz insisted Ms. Bacon transfer a case when her casework was not concluded, and made a demeaning comment about Ms. Bacon in front of others. (*Id.*, ¶ 17). Ms. Buchholtz also required that she and Ms. Bacon meet with the branch manager to discuss communications and expectations, which Ms. Bacon did not want to do knowing it signaled a poort outcome for her. (*Id.*, ¶ 21).

Ms. Buchholtz was short and curt with Ms. Bacon, and treated her differently than other caseworkers. (Southall Dec., ¶ 8). Ms. Buchholtz looked exasperated when Ms. Bacon showed up in her cubicle with questions. (Bacon Dec. ¶ 9). It was evident to others that Ms. Buchholtz treated Ms. Bacon differently. (Southall Dec., ¶ 8). Ms. Buchholtz did not provide the same kind of assistance to Ms. Bacon that she gave to other caseworkers, but told Ms. Bacon to figure it out. (*Id.*). Ms. Buchholtz referred to Ms. Bacon in front of other supervisors, "Here comes the force to be reckoned with" giving the impression that Ms. Bacon was trouble. (Bacon Dec., ¶ 40). Ms. Buchholtz's comments and behavior toward Ms. Bacon was humiliating and demeaning.

Ms. Buchholtz then held two fact findings on Ms. Bacon, in May and August of 2017, which employees generally assume will lead to the worst outcome, and then terminated Ms. Bacon. (Bacon Dec., ¶¶ 30, 32, 36; Buchholtz Dep. 225:18-226:4).

### 3.    Evidence is Sufficient to Show Causation

The third requirement of a prima facie case of retaliation is a causal link between the protected activity and adverse action. "At the prima facie stage of a retaliation case, 'the causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative ... action are not completely unrelated.' " *Poland v. Chertoff*, 494 F.3d 1174, 1180 n. 2 (9th Cir. 2007) (*quoting Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)) (alteration omitted); *Emeldi v. Univ. of Oregon*, 673 F3d 1218, 1226 (9th Cir. 2012), *republished*

PAGE 18 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*as amended* at 698 F3d 715 (9th Cir. 2012).  "[C]ausation is a question of fact, [but] may be decided as a matter of law if, under undisputed facts, reasonable minds could not differ." *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 n. 4 (9th Cir. 1994).  Defendants' assertion that Ms. Bacon cannot establish causation because there is too much time between her protected activity and her termination misstates the law and ignores the evidence.

Although DHS asserts a bright line rule for proximity of a window of three to four months, this argument is not supported by case law.  In fact, the Ninth Circuit has declined to establish such a rule. In *Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003), the Ninth Circuit stated,

> But we caution that a specified time period cannot be a mechanically applied criterion. A rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic. *See Clark County School Dist. v. Breeden,* 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2002) (cautioning against considering elapsed time in isolation from other factors: "Action taken (as here) 20 months later suggests, by itself, no causality at all.").

> Retaliation often follows quickly upon the act that offended the retaliator, but this is not always so. For a variety of reasons, some retaliators prefer to take their time: They may wait until the victim is especially vulnerable or until an especially hurtful action becomes possible. Or they may wait until they think the lapse of time disguises their true motivation.

A plaintiff may satisfy the causation element through "circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  A plaintiff may also show causation through other circumstantial evidence of causation, such as a 'pattern of antagonism' following the protected conduct.  *Castillo v. Dominguez*, 120 Fed.Appx. 54, 57 (9th Cir. 2005) (quoting *Porter v. Cal. Dep't of Corrs.*, 383 F.3d 1018, 1030 (9th Cir. 2004)). For instance, a pattern of ongoing retaliation following protected conduct supports a finding of causation. *See Wood v. Dollar Rent–A–Car Sys., Inc.*, 128 Fed.Appx. 620, 622 (9th Cir. 2005) (manager with knowledge of plaintiff's protected activity and pattern of antagonism following protected conduct supported finding of causation).

Failure to follow establish procedure and policies can also give rise to an inference of

PAGE 19 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

causation. *Perez v. U.S. Postal Serv.,* 76 F. Supp. 3d 1168, 1190 (W.D. Wash. 2015) (Evidence that Postal Service deviated from policies regarding notice of investigatory interview and failure to consult Labor Relations was circumstantial evidence of retaliatory intent); *Earl v. Nielsen Media Research, Inc.* 658 F.3d 1108, 1117 (9th Cir. 2011)(Such deviations from policies and procedures provide circumstantial evidence of retaliatory intent.).

For purposes of summary judgment, Plaintiff has presented sufficient evidence that when considered as a whole, raises a genuine issue of material fact concerning a causal link between the adverse treatment against her and her complaints of discrimination.

Ms. Bacon does not rely solely upon proximity of time, but on additional evidence, including direct evidence of Ms. Buchholtz's hostility toward Ms. Bacon's reports, characterizing Ms. Bacon as "stirring up controversy," being in the middle of conflict, and as "force to be reckoned with." (Bacon Dec., ¶¶ 7, 13, 40).  Although Ms. Bacon reported Mr. Fuentes' conduct in August 2016, it does not appear that Ms. Buchholtz did anything in response to Ms. Bacon's report, because DHS did not begin investigating Mr. Fuentes until November 16, 2016, after Detective Chuck Anderson raised concerns about Mr. Fuentes' conduct.[3]  (See, Defs.' Motion, p. 9; Anderson Dep. 13:16-15:17).  Detective Anderson concluded from his interactions with DHS supervisors that they were more concerned about the public perception of DHS than the risk Mr. Fuentes presented to kids by not investigating allegations. (Anderson Dep. 16:3-25).  A reasonable fact finder could conclude Ms. Buchholtz's comments and failure to respond to the complaints demonstrates her hostility to information that put the branch in a negative light.

In response to the report about Ms. Durbin, Ms. Buchholtz talked to Ms. Durbin and concluded the wrong entry had been a mistake, and that the mistaken date was still outside the required timeline for initial contact. (See, Buchholtz Dec. (ECF 32, p.3, ¶ 3)).  Yet, a review of the case assessment shows otherwise.  The case was assigned to Ms. Durbin on July 11, 2016 on a

---

[3]Ms. Buchholtz's statement that she would have investigated such a report immediately (See ECF 32, p. 2, ¶ 2), is self-serving, conclusory, and not supported by any evidence.

PAGE 20 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
Fax (503) 241-2249

5-day response time, and Ms. Bacon discovered that Ms. Durbin had entered her (Ms. Durbin's) initial contact as July 15, 2016, the same date Ms. Bacon made initial contact on her companion case, which would have made Ms. Durbin's initial contact timely.  (Bacon Dec. ¶¶ 6, 7, Ex. 2, pp. 2, 4).  Ms. Durbin's corrected assessment shows the initial contact on July 21, 2016. (*Id.*)[4]  Ms. Buchholtz's misrepresentation about  Ms. Durbin's error in her sworn declaration raises questions about her credibility and is specific evidence about her retaliatory motive by trying to negate Ms. Bacon's concerns.

In January 2017, Ms. Buchholtz contacted HR over the Irvine conflict of interest issue and asked about a possible fact finding, which suggests that she was considering discipline for Ms. Bacon earlier than May and not related to initial contacts or lack of supervision. (Lloyd Dec., Exs. 12, 13).  Despite Ms. Bacon's explanation about the confusion over names, Ms. Buchholtz believed Ms. Bacon knew of the contact with Officer Irvine but did not disclose it earlier.  (Buchholtz Dep. 128:14-129:8).

Ms. Buchholtz missed meetings with Ms. Bacon, did not staff her cases with her prior to Ms. Bacon's medical leave, and did nothing to monitor Ms. Bacon's cases during her medical leave.  She was curt and displayed hostility toward Ms. Bacon after she reported the misconduct.  She treated Ms. Bacon differently than other workers that was noticeable to Ms. Bacon's coworkers.

In addition to the ongoing pattern of antagonistic behavior, Ms. Bacon did not receive any progressive discipline contrary to the requirements of the collective bargaining agreement. (Deposition of Steven Vesper ("Vesper Dep.") 49:22-51:1; Lloyd Dec., Ex. 15, p. 3).  Ms. Buchholtz decided to proceed directly to a fact finding which can result in discipline. (Buchholtz Dep. 114:20-115:8).  There was no progressive discipline, despite Ms. Buchholtz's concerns about Ms. Bacon's performance that supposedly arose in September or October of 2016, when Ms. Bacon expressed frustration with management. (Buchholtz Dep.  118:17-124:9).

---

[4]Interestingly, Ms. Durbin does not refer to Ms. Bacon in the assessment activities, while Ms. Bacon includes references to Ms. Durbin. (*Id.*).

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
Fax (503) 241-2249

####     4.        Pretext

Because Defendants have provided a legitimate, nondiscriminatory reason for the challenged action, Ms. Bacon now has the burden to show pretext. She may show pretext by either showing that unlawful discrimination more likely motivated the employer, or by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable. *Godwin v. Hunt Wesson*, 150 F.3d 1217, 1220-22 (9th Cir. 1998). She may satisfy this burden by either providing direct or circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 804-05 (1973); *Coghlan v. Am. Seafoods Co. LLC,* 413 F.3d 1090, 1094–95 (9th Cir. 2005). Importantly, "temporal proximity between protected activity and an adverse employment action by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas  Cnty*., 341 F.3d 858, 865 (9th Cir. 2003).

A plaintiff may also raise a triable issue of pretext through evidence that an employer's deviation from established policy or practice worked to her disadvantage. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1214 (9th Cir. 2008); *Earl v. Nielsen Media Research, Inc.* 658 F.3d 1108, 1117 (9th Cir. 2011) (Deviations from policies and procedures provides circumstantial evidence of retaliatory intent).

A plaintiff is "required to produce very little direct evidence of the employer's discriminatory intent to move past summary judgment." *Chuang,* 225 F.3d at 1128. On the other hand, where a plaintiff seeks to demonstrate that the non-discriminatory reason articulated by the employer is pretext based on circumstantial evidence, a plaintiff must offer "specific" and "substantial" evidence to survive summary judgment. *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001). Either way, a "plaintiff in a discrimination case need not necessarily produce additional evidence of discrimination in the third stage of the *McDonnell Douglas* inquiry" so long as the plaintiff has produced "sufficient evidence for a reasonable fact finder to reject the employer's nondiscriminatory explanation for its decision." *Reeves,* 530 U.S. at 140.

Ms. Buchholtz's statement that Ms. Bacon was trying to stir up controversy and was in the

PAGE 22 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

middle of conflict is direct evidence of her animosity toward Ms. Bacon's report. "Direct evidence of animus ... creates a triable issue" as to an employer's motive in taking adverse actions, "even if the evidence is not substantial." *Dominguez–Curry v. Nevada Trans. Dept.*, 424 F.3d 1027, 1038 (9th Cir. 2005); *see also Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d at 1128 (9th Cir. 2000) ("The plaintiff is required to produce 'very little' direct evidence of the employer's discriminatory intent to move past summary judgment.") (citing *Godwin*, 150 F.3d at 1221). Direct evidence is that which "proves the fact of [discriminatory animus] without inference or presumption." *Id.* The Ninth Circuit has "repeatedly held that a single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer." *Id.* at 1039. Ms. Buchholtz's statement, combined with her failure to take any action regarding Miguel Fuentes, and allowing Ms. Durbin to change the dates in her assessment, while characterizing the wrong entry as a mistake that did not gain Ms. Durbin anything, when that is not true, demonstrates a discriminatory intent.

Other evidence that supports Ms. Bacon's prima facie case also demonstrates pretext. Ms. Bacon was allegedly terminated for work performance, including that for 13 cases, she allegedly failed to make initial contacts within the required timeline. (Bacon Dec., Ex. 20, p. 6 ). Yet, in March, Ms. Buchholtz's unit met their initial contact timelines only 44% of the time. (Bacon Dec., Ex. 10). As of May 1, 2017, Ms. Buchholtz's unit met timelines only 45% of the time. (*Id.*, Ex. 14). Ms. Bacon was not the only employee who needed to improve on the entry of her initial contacts, as Ms. Buchholtz reminded several employees about this issue and her expectation that contacts be entered within two days. (*Id.*). Ms. Bacon was singled out and ultimately fired at a time when a state audit showed that most caseworkers were behind and not able to keep up with their caseloads. (Crawford Dep. 50:10-24; Lloyd Dec., Ex. 10, pp. 2, 8).

Another reason for Ms. Bacon's termination - failing to enter her initial contacts within two days – was based on a May 1, 2017 directive. (Bacon Dec. Ex. 14). Yet, all of the cases addressed in the fact finding and in the termination notice were cases assigned with initial contacts due prior

PAGE 23 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

to when Ms. Bacon had received notice of that 2-day directive. (Bacon Dec., ¶ 41, Exs. 20, Ex.21). The whole unit had a number of initial contacts not entered on their assessments in March. (Bacon Dec., Exs. 9, 10).  As of May 1, 2017, three other caseworkers, in addition to Ms. Bacon, could all improve in "the timely entry of our initial contacts." (*Id*., Ex. 14).  Writing up assessments is the most common issue for employees being out of timeframes. (Cleary Dep. 13:5-17).  Yet, Ms. Bacon was the only caseworker disciplined by Buchholtz for not entering contact information. (Buchholtz Dep. 112:24-113:5).  In addition, the OR-Kids system had issues and sometimes entries such as initial contact information would disappear from the assessment. (Southall Dec., ¶ 9).

Ms. Bacon was also terminated for not closing the Rose Singleton assessment when Ms. Buchholtz said they would not keep the case open, and instead for doing additional assessment activity that resulted in a safety plan for the young children. (Buchholtz Dep. 286:3-289:3).  Ms. Buchholtz wanted this case closed because of the state goal to close overdue assessments. (*Id*., 291:10-292:18).  Yet, in their email communications about this case, Ms. Buchholtz asked Ms. Bacon for additional information on May 16, 2017, so Ms. Bacon made one last contact to provide additional information, when she discovered a dangerous man in the home. (Bacon Dec., ¶¶ 28, 37, Ex. 16).  Ms. Bacon staffed the case with another supervisor because Ms. Buchholtz was out and she was concerned that the mother was unable to provide a safe environment for her young children. (Bacon Dec., ¶ 37).  The supervisor agreed that a safety plan was necessary on the case. (*Id*.).  The man was later arrested and serving jail time for numerous crimes. (*Id*.)  It was more important to Ms. Buchholtz to close the case than to thoroughly assess the safety of the children.

In addition, the termination was based on allegations of Ms. Bacon's poor professional judgment based on two alleged incidents, one was a conflict with DDA Roger Wong during which Ms. Bacon broke down crying after the attorney criticized her work, and the other was involved an emergency response in which police officers felt Ms. Bacon was asking them to go beyond the law. (Buchholtz Dep. 149:2-153:2).  Yet, Ms. Buchholtz did not follow up with the attorney or police officers to gain a fuller understanding of what occurred.  (*Id*).  Ms. Buchholtz also concluded that

PAGE 24 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Ms. Bacon failed to declare a conflict of interest regarding Officer Irvine, even though Ms. Bacon explained in October 2016 that she was first told it was Officer Irwin and she stated she had a conflict.   (Bacon Dec., ¶ 10).

Ms. Bacon did not receive any progressive discipline prior to the May, 2017 fact finding meeting, which is contrary to the principles of progressive discipline addressed in the collective bargaining agreement. (Bacon Dec., ¶ 38; Buchholtz Dep. 117:8-16).   A reasonable fact finder could find that the lack of progressive discipline supports an inference that the concerns about Ms. Bacon's performance were not legitimate.   The totality of the evidence creates an inference of pretext sufficient to defeat summary judgment.

C.      42 U.S.C. § 1983 Claim

Defendants are correct that the section 1983 claim cannot be maintained against the state of Oregon, and therefore, Ms. Bacon concedes this claim.   However, summary judgment must be denied for the § 1983 retaliation claim against Ms. Buchholtz because the evidence demonstrates that Ms. Buchholtz retaliated against Ms. Bacon because of her protected speech and Ms. Buchholtz is a proper defendant.   The § 1983 has a two-year statute of limitations and is not subject to the OTCA.

1.      Ms. Buchholtz is a proper defendant

Contrary to defendants' assertion, Ms. Buchholtz is a proper defendant because she personally retaliated against Ms. Bacon.   State officers are subject to § 1983 liability for damages in their personal capacities even when the conduct in question relates to their official duties. *Hafer v. Melo*, 502 U.S. 21, 25-31 (1991).   Where as here, a plaintiff fails to identify the capacity in which the state actor is sued, the Ninth Circuit looks beyond the caption of the complaint to the "basis of the claims asserted and the nature of relief sought." *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990) (internal citations and quotations omitted); *see also Shoshone–Bannock Tribes v. Fish & Game Commission*, 42 F.3d 1278, 1284 (9th Cir. 1994) (erecting presumption that Plaintiffs sued state officials in their individual capacities as "any other construction would be illogical ...").   The

PAGE 25 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

court should presume the Third Claim for Relief is against Ms. Buchholtz in her individual capacity under § 1983, and she is therefore, a proper defendant.

Ms. Buchholtz was personally involved in the retaliatory conduct and had a sufficient connection between that conduct and Ms. Bacon's termination.  In fact, Ms. Buchholtz was identified by defendants as the individual with the most knowledge about the reasons for Ms. Bacon's dismissal. (Buchholtz Dep., 4:16-5:10; 88:16-89:5; Lloyd Dec., Ex. 16).

### 2.    Ms. Bacon has made a *prima facie* case under § 1983

"The elements of a First Amendment claim brought under section 1983 in the employment context are (1) the plaintiff engaged in protected speech;  (2) the employer took an adverse employment action against the plaintiff; and (3) the plaintiff's speech was a substantial or motivating factor for the adverse employment action."  *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).  The equal protection claim is parallel to claims of disparate treatment arising under Title VII "because both require proof of intentional discrimination." *Lowe v. Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985). "The same standards are used to prove both claims." *Id.*

### a.    Ms. Bacon engaged in Protected Speech[5]

Public employees suffer a constitutional violation when they are wrongfully terminated or disciplined for making protected speech. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). Significantly, to qualify as "protected speech" under the first element, the employee must have uttered the speech as a citizen, not an employee; as the Supreme Court clarified, when public employees make statements pursuant to their official duties, those statements do not receive First Amendment protection.  *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951,126 S.Ct. at 1955–56 (2005).  "The inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n. 7 (1983) (internal citations omitted).

Ms. Bacon's reports to Ms. Buchholtz and Detective Anderson that other CPS workers had

---

[5]Defendants do not challenge or address this or any element of the § 1983 claim.

LAW OFFICES OF JUDY SNYDER
1000 S.W. BROADWAY, SUITE 2400
PORTLAND, OREGON 97205
(503) 228-5027
Fax (503) 241-2249

entered false information in CPS assessments were protected speech. *Marable v. Nicthman*, 511 F.3d 924, 932 (9th Cir. 2007) ("an employee's charge of high level corruption in a government agency has all the hallmarks that we normally associate with constitutionally protected speech."). Reporting falsified assessments was not part of Ms. Bacon's official duties.  Ms. Bacon's primary job purpose was to provide "assessment, short-term and long-term protective services, as well as Family Support Services and Substitute Care Services" and to "evaluate situations where a child is alleged to be at risk and provide services to resolve the problems which underlie the child maltreatment." (See, Buchholtz Dec., Ex. 1, p. 3 (ECF, 32 p. 9)).  Ms. Bacon's official duties did not extend to reporting that others falsified CPS assessments.

### b.    Ms. Bacon suffered Adverse Action

To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind.  Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden. *Coszalter*, 320 F.3d at 975.  The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases. The goal is to prevent, or redress, actions by a government employer that "chill the exercise of protected" First Amendment rights. *See Rutan v. Republican Party*, 497 U.S. 62, 73 (1990) (protection of political belief and association under the First Amendment).

Various kinds of employment actions may have an impermissible chilling effect.  Depending on the circumstances, even minor acts of retaliation can infringe on an employee's First Amendment rights. *See id*. at 75–76; *Anderson v. Central Point School District*, 746 F.2d 505, 506 (9th Cir. 1984) (being temporarily suspended from coaching duties and insulted by employer supported a public employee's claim for emotional distress damages).  The relevant inquiry is whether the state has taken action designed to retaliate against and chill protected expression. *Coszalter*, 320 at 975.  If a plaintiff can establish that the actions taken by defendants were reasonably likely to deter her from engaging in protected activity under the First Amendment, she will have established a valid claim under § 1983.  *Id*.  In *Coszalter*, the court held that individual

PAGE 27 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

actions, including a reprimand containing false allegations, repeated ongoing verbal harassment and humiliation, and unpleasant work assignment, and two consecutive "special" reviews of work quality, among others, amounted to a severe and sustained campaign of retaliation that was reasonably likely to deter plaintiffs from engaging in protected speech under the First Amendment. *Id.* at 976-977.

The conduct described above which created a hostile work environment also supports Ms. Bacon's § 1983 claim.  After Ms. Bacon's report, during which she was accused of stirring up controversy, Ms. Buchholtz's conduct served to chill Ms. Bacon's speech, because she knew Ms. Bacon was trying to make a case against her.  Ms. Buchholtz questioned Ms. Bacon's integrity during the Irvine investigation.  Ms. Buchholtz began ignoring or canceling scheduled meetings with Ms. Bacon.  Ms. Buchholtz failed to staff Ms. Bacon's cases before an extended medical leave, and did nothing on those cases during Ms. Bacon's leave.  Shortly after Ms. Bacon returned from leave, Ms. Buchholtz accused Ms. Bacon of being in the middle of conflicts and drama.  Ms. Buchholtz called Ms. Bacon to a meeting with the branch manager, which Ms. Bacon knew only happened when employees were facing discipline.  During that meeting, Ms. Bacon denied any issues with Ms. Buchholtz because she knew Ms. Buchholtz was trying to make a case for termination.  Ms. Bacon's speech was effectively chilled.

Ms. Buchholtz then held two fact findings on Ms. Bacon.  Most employees have great concerns about fact-findings, and "naturally assume the worst outcome." (Buchholtz Dep. 225:18-226:4). That assumption was born out by Ms. Bacon's termination.  Being accused of misconduct, subjected to a disciplinary hearing and suspended without pay is "about as adverse as it gets." *See, Marable*, 511 F.3d at 929.

### c.    Substantial or Motivating Factor

There are three ways a plaintiff can show that retaliation was a substantial or motivating factor behind a defendant's adverse actions.  First, a plaintiff can introduce evidence regarding the proximity in time between the protected activity and the retaliatory employment decisions, from

PAGE 28 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

which a jury logically could infer that the plaintiff was terminated in retaliation for her speech. *Keyser v. Sacramento City Unified School District*, 265 F.3d 741 (9th Cir. 2001) (as amended). Second, a plaintiff can introduce evidence that "his employer expressed opposition to his speech, either to him or to others." *Id.*  Third, the plaintiff can introduce evidence that "his employer's proffered explanations for the adverse employment action were false and pre-textual." *Id.* at 752.

The same evidence that supports causation for Ms. Bacon's ORS 695A.199 retaliation claim supports the causal connection between her protected speech and the unlawful retaliation. Immediately after reporting the misconduct, Ms. Buchholtz expressed her opinion of Ms. Bacon as "trying to stir up controversy."  Ms. Buchholtz then supposedly noticed problems with Ms. Bacon's performance in September or October, (Buchholtz Dep. 118:17- 23), yet did not issue any form of progressive discipline.  Ms. Buchholtz accused Ms. Bacon of policy violations - not making initial contacts and not entering initial contacts into her assessments - that were widespread in her unit and the branch.  Ms. Buchholtz also held Ms. Bacon to an expectation of entering initial contacts within two days, when all of the cases used in the fact finding were assigned prior to that expectation being announced.  Ms. Buchholtz also terminated Ms. Bacon for not following her directive to close an assessment, when Ms. Bacon's additional investigation revealed significant safety issues, including the involvement of a dangerous sexual predator who later went to jail.

Ms. Bacon was terminated for supposedly not making initial contacts within timelines on 13 of her case, but Ms. Buchholtz's unit made initial contacts within the timelines only 45% of the time and the Beaverton office as a whole only 49% of the time as of May 1, 2017. (Bacon Dec., Ex. 14). Entry of initial contacts was an issue for everyone. (*Id.*).

Although Ms. Bacon was not terminated until November 3, 2017, she was on medical leave for nearly two months following the first fact finding, then subjected to a second fact finding, after which Ms. Buchholtz recommended Ms. Bacon be terminated. (See Buchholtz Dec. Att. 4, p. 11

PAGE 29 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(ECF 32, p. 100)[6]).  The only issue addressed in the second fact finding was Ms. Bacon's supposed failure to notify a parent before interviewing a child at school.  Yet Ms. Bacon and her coworker made numerous attempts to notify the parent, attempted to staff the case with a supervisor, but none were available, and learned from the child that the mother was the parent that had a potential problem. (Bacon Dec., ¶ 32).  The time between Ms. Bacon's August 2016 report and her November 2017 termination must be considered in the totality of circumstances. *Coszalter,* 320 at 978 ("the length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment").

The evidence adduced by Ms. Bacon shows that Ms. Buchholtz expressed opposition to her speech, and she began retaliating against Ms. Bacon shortly after her protected speech.  A reasonable fact finder could find that the justifications for Ms. Bacon's termination were pretextual.[7]

D.    **OFLA Retaliation Claim**

Defendants do no separately address Ms. Bacon's claim asserting retaliation for her taking protected medical leave, but only in relation to her retaliation claim under ORS 659A.199.  While the Second Claim for Relief is not well-defined, it does specifically identify Ms. Bacon's use of protected medical leave as a basis for the claim in Counts 1 and 2. (See, First Amended Complaint, ¶¶ 20, 30; and Defs' Motion, p. 5).  To the extent that the Second Claim refers to whistleblower retaliation, it should be construed consistent with the analysis under her ORS 659A.199 claim above.   To the extent the claim is against Ms. Buchholtz for conduct in the scope of her employment, the claim is properly against DHS only. *Demaray v. State , Dept. Of Env. Quality*, 127 Or.App. 494, 502, 873 P.2d 403 (1994).

---

[6]Although these notes are not identified, they are presumably Ms. Buchholtz's notes since they are attached to her declaration, ECF 32.

[7]Defendants have not raised qualified immunity, which does not provide a defense to Ms. Buchholtz.  At the time of the actions in question, both the constitutional protection of employee speech and a First Amendment cause of action for retaliation were clearly established.  *Coszalter*, 320 at 979.

PAGE 30 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

For her claim of retaliation for using protected leave under OFLA, Ms. Bacon must show 1) she took protected leave; 2) she was subjected to an adverse employment action; and 3) taking the leave was a negative factor in the adverse employment action. *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001). The OFLA is to be "construed to the extent possible in a manner that is consistent with any similar provisions of [the FMLA]." ORS 659A.186(2). It is unlawful for an employer to "interfere with, restrain, or deny the exercise or the attempt to exercise, any right provided" by the FMLA. *Bachelder.* at 1122 (citing 29 U.S.C. § 2615(a)(1) ). An allegation a plaintiff has been retaliated against for exercising his or her FMLA rights is properly construed as an interference claim under § 2615(a)(1) ). *Id.*, at 1124. The *McDonnell Douglas* burden shifting analysis does not apply to FMLA interference claims, so a plaintiff "can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Id.*, at 1125.

Like the First and Fourth Claims for Relief, the Second Claim for Relief is timely as it relates to Ms. Bacon's termination. Even if conduct which is not actionable as outside the statute of limitations, it can be used as background evidence to support a timely claim. *Morgan*, 536 U.S. at 113. Acts prior to the statute of limitations are actionable if they are part of the same unlawful employment practice, such as a hostile work environment. *Ray,* 217 F.3d at 1245 (extending hostile work environment claims to those based on engaging in protected activities); *Griffin By & Through Stanley v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 112 Or. App. 575, 581, 831 P.2d 42, 46 (1992), amended (June 2, 1992), *aff'd in part, rev'd in part*, 318 Or. 500, 870 P.2d 808 (1994) (applying the continuing tort doctrine to an employment discrimination claim subject to the OTCA).

### 1. Ms. Bacon took protected medical leave

There is no dispute that Ms. Bacon took protected medical leave in December 2016, as well as in May through July of 2017. (See Defs. Motion, p. 5 n. 10).

### 2. Ms. Bacon suffered adverse actions

There is also no dispute that Ms. Bacon was terminated in November of 2017. As with the

PAGE 31 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

other claims, Ms.Bacon suffered other adverse actions.  An adverse action is "any action that is reasonably likely to deter an employee from engaging in protected activity." *Shepard v. City of Portland,* 829 F.Supp.2d 940, 960-61 (D.Or.2011) (internal citation omitted); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (The circuit court noted that termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review, and refusal to consider an employee for promotion are adverse employment actions).

In the present case, Ms. Bacon was subjected to two fact finding investigations, and ultimately terminated based on those fact findings.  Ms. Buchholtz acknowledged that most employees assume the worst outcome for fact findings.  (Buchholtz Dep. 225:18-226:4).

### 3.    The evidence demonstrates causation

To establish causation a plaintiff must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [his] firing and that but for such activity [he] would not have been fired." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064–65 (9th Cir. 2002).  As the Ninth Circuit has previously stated, "in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Id*. at 1065. In *Villiarimo*, the Court held that the "nearly 18-month lapse between the protected activity an adverse employment action [was] simply too long, by itself, to give rise to an inference of causation." *Id*. at 1065; *see also Foraker v. Apollo Grp. Inc.*, 427 F.Supp.2d 936, 943 (D. Az. 2006) (A six-month lapse is too long, standing alone, to establish a prima facie case of retaliation.).  By comparison, a lapse of less than two months may be sufficient to let the issue go to a jury. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (sufficient evidence of causation where adverse actions occurred less than three months after complaint filed, two weeks after charge first investigated, and less than two months after investigation ended); *Foraker*, 427 F.Supp.2d at 943 (citing cases and indicating that a two-month lapse in time is sufficient to withstand summary judgment).

PAGE 32 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In the present case, there is evidence that shortly after Ms. Bacon returned from medical leave in December, Ms. Buchholtz inquired about a possible fact finding and solicited negative information about Ms. Bacon. (Lloyd Dec., Exs. 12-14). The evidence further shows that very shortly after Ms. Bacon's medical leave in May of 2017, Ms. Buchholtz conducted the May 26, 2017 fact finding. After Ms. Bacon returned from her extended medical leave in June and July 2017, Ms. Buchholtz held a second fact finding in early August 2017. These fact findings, which most employees expect to result in the worst outcome, occurred shortly on the heels of Ms. Bacon's protected leaves. Timing alone, is sufficient to raise an inference of causation for summary judgment purposes. *See, Leinenbach v. Washington Cty., Oregon,* 3:17-CV-01703-HZ, 2018 WL 6531646, at *10 (D.Or. Dec. 11, 2018) (adverse actions all occurred contemporaneously with or soon after Plaintiff's exercise of his rights under the FMLA and OFLA, thus, some evidence from which a reasonable factfinder could conclude that Defendant retaliated against him for engaging in protected activity); *see also Goldsby v. Safeway Inc.*, 3:16-CV-02056-HZ, 2018 WL 297583, at *12 (D Or Jan 4, 2018) (summary judgment denied on OFLA/FMLA claim; causal connection established by the temporal proximity between Plaintiff's leave and Defendant's decisions to transfer her to night shift, deny her transfer to another store, and issue her a written corrective action notice, less than three months after Plaintiff returned from leave).

In addition to temporal proximity, Ms. Bacon has adduced evidence that although Ms. Buchholtz knew Ms. Bacon would take medical leave in December 2016, she did not review Ms. Bacon's cases or staff them with her prior to the leave, and did nothing to monitor Ms. Bacon's cases during the leave. Instead, Ms. Bacon managed her cases during leave. When Ms. Bacon went on leave in May of 2017, Ms. Buchholtz appeared irritated with Ms. Bacon for taking more medical leave. (Bacon Dec., ¶ 25). Ms. Buchholtz's attitude, combined with her actions in conducting fact findings shortly after periods of leave, is sufficient to establish causation.

    4.    **The evidence supports pretext**

The same evidence that demonstrates pretext for Ms. Bacon's other retaliation claims

PAGE 33 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

applies equally to her OFLA retaliation claim, including that Ms. Bacon was terminated for issues that everyone experienced, and she was not given any progressive discipline.

## V.    CONCLUSION

Ms. Bacon has proffered evidence which gives rise to an inference that she was retaliated against because she reported unlawful conduct of other caseworkers, and because she used protected medical leave.  The evidence further demonstrates pretext.  At a minimum, there are numerous disputes of fact that must be decided by a jury.  Therefore, summary judgment should be denied on Ms. Bacon's claim for retaliation.

DATED this 6th day of May, 2020.

LAW OFFICES OF JUDY SNYDER

s/ Holly Lloyd
JUDY DANELLE SNYDER, OSB No. 732834
HOLLY LLOYD, OSB No. 942979
Telephone: (503) 228–5027
Facsimile: (503) 241-2249
Email: judy@jdsnyder.com
Email: holly@jdsnyder.com
Of Attorneys for Plaintiff

PAGE 34 - PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT