ELLEN F. ROSENBLUM
Attorney General
VANESSA A. NORDYKE  #084339
Senior Assistant Attorney General
KENNETH C. CROWLEY  #883554
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4792
Email: Vanessa.A.Nordyke@doj.state.or.us
      kenneth.c.crowley@doj.state.or.us

Attorneys for Defendants Oregon DHS and Sonya Buchholtz

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JENNIFER BACON,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF HUMAN SERVICES, a subdivision of the State of Oregon; and SONYA BUCHHOLTZ, an individual,<br><br>    Defendants. | Case No. 3:18-cv-01925-YY<br><br>DEFENDANTS' MOTION IN LIMINE |

**MOTION IN LIMINE NO. 1: Secretary of State (SOS) Audit of DHS and Bonnie Crawford, SOS employee**

      Defendants move in limine to exclude argument and evidence concerning the Secretary of State (SOS) audit of DHS (Plaintiff's Exhibit 57) and SOS auditor Bonnie Crawford. Nothing in the audit makes it more or less likely that plaintiff's claims are true. The methodology for the SOS report indicates that Crawford and other SOS employees did *not* contact witnesses to this case. SOS did not interview defendant Buccholtz, plaintiff, or anyone else in the Beaverton

Page 1 -    DEFENDANTS' MOTION IN LIMINE

branch of DHS.[1] SOS questioned 14 district managers, which did not include the district manager for plaintiff's DHS office. *Id*. SOS visited several DHS offices, but did not visit plaintiff's DHS office. Plaintiff has identified Bonnie Crawford as a witness, but Crawford did not interview plaintiff or any other witness to this case. *Id*. Nothing in the SOS audit makes it more or less likely that Buccholtz or anyone else at Beaverton DHS discriminated or retaliated against plaintiff.

Moreover, Exhibit 57 (SOS report) is highly prejudicial to defendant DHS and defendant Buccholtz, because it describes bullying, intimidation, and other misconduct by DHS personnel *outside* of plaintiff's DHS branch. There simply is no connection between the audit of other DHS offices and the Beaverton office. The audit smears defendants for things they never said or did. Defendants therefore move in limine pursuant to FRE 401 and 403.

**MOTION IN LIMINE NO. 2: Irvine case (Exhibits 7 and 8)**

Plaintiff deposed DHS employee Tilynn Wilson about the Michael Irvine case, a case handled by Wilson from approximately September through November 2016. Michael Irvine was the father and suspected perpetrator, and had a personal relationship with plaintiff. Plaintiff was never assigned to the case, but the case was in her DHS branch. Plaintiff signed a conflict of interest form for the Irvine case on October 26, 2016 because of her contact with Irvine. DHS took no disciplinary action against plaintiff over the Irvine case. DHS initiated a fact-finding meeting—which is not discipline—on May 26, 2017. The transcript of the fact-finding shows no discussion of the Irvine case.

It is true that DHS Human Resources gathered information from Tilynn Wilson about the Irvine case on August 16, 2017, that was in response to plaintiff bringing the Irvine case up on

---

[1] Attachment 1, Decl. Bonnie Crawford, ¶ 1.

Page 2 -    DEFENDANTS' MOTION IN LIMINE
        VAN/cbh/9988316-v1
                                Department of Justice
                                1162 Court Street NE
                                Salem, OR 97301-4096
                            (503) 947-4700 / Fax: (503) 947-4792

July 31, 2017 as part of a discrimination complaint she had filed against Buccholtz.[2] Plaintiff told the investigator that Buccholtz "forced" her to sign the conflict of interest form.[3]

In the pre-dismissal proceedings initiated on September 8, 2017, DHS identified several reasons to fire plaintiff, and the Irvine case was not one of them. In the termination letter dated November 3, 2017, DHS identified several reasons to fire plaintiff. The Irvine case was not one of them. DHS did not identify the Irvine case as a basis for a fact-finding meeting, either. The Irvine case was handled over a year before DHS fired plaintiff. The Irvine case is irrelevant and confuses the issues for the jury. Defendants therefore move in limine pursuant to FRE 401 and 403.

**MOTION IN LIMINE NO. 3: Criminal investigation of Austin Putney**

Plaintiff deposed Buccholtz about DHS's handling of a case concerning children "MS" and "KS". Austin Putney had a romantic relationship with the mother of MS and KS. Plaintiff's pre-dismissal proceedings mentioned plaintiff's failure to timely contact MS and KS, and her failure to close the case as instructed by her supervisor, Buccholtz. In Buccholtz's deposition, plaintiff's counsel stated "As a result of Ms. Bacon's keeping the case open she discovered Austin Putney in [RS]'s home and reported that to law enforcement." Buccholtz Depo 357:1-4. Plaintiff's counsel stated during Buccholtz's deposition that Putney was serving a criminal sentence for sexual abuse of children. The victims in the Putney criminal case are not MS or KS. The victims are "TH", "LL" and "JB."[4] There is no evidence that plaintiff's decision to keep the RS/MS case open had any bearing on the criminal prosecution of Putney for different children.

DHS records show Plaintiff went on leave in May 2017 with the MS/KS case still open, contrary to Buccholtz's direction to close it. While plaintiff was out on leave, Buccholtz completed the MS/KS case assessment in June 2017 "unable to determine" whether Putney

---

[2] Attachment 2, BAC-PROD-000868- BAC-PROD-000873; Attachment 3, BAC-PROD-000166-167

[3] Attachment 5, BAC-PROD-000173

[4] Attachment 6, Plaintiff-001192-1194

Page 3 -   DEFENDANTS' MOTION IN LIMINE
VAN/cbh/9988316-v1
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

abused MS or KS.[5] As of June 2017, Putney "has not been charged with any sexual assault crimes. He has a founded disposition for sexual abuse. Austin was not contacted during this assessment. There is much unknown about his propensity to sexually abuse vulnerable people."[6] In other words, DHS closed their case in June 2017 without plaintiff being criminally charged in any case. To date, Putney has not been indicted for any criminal conduct naming MS or KS as his victims.

Putney was not indicted for crimes against TH, JB and LL until March 15, 2018. DHS fired plaintiff on November 3, 2017. The criminal investigation was not brought up by DHS in the pre-dismissal letter. Plaintiff did not bring up the criminal investigation in her response to the pre-dismissal letter; she merely said there was "new information on the case that needed to be addressed."[7] The criminal investigation into Putney had no bearing on the decision to initiate a fact-finding meeting (May 2017), to initiate pre-dismissal proceedings (September 2017), or to end plaintiff's employment (November 2017). In short, the MS/KS case is relevant, but the criminal conviction of Putney is not. Putney's criminal investigation and conviction for children TH, JB, and LL is irrelevant and confuses the issues for the jury. Defendants therefore move in limine pursuant to FRE 401 and 403.

**MOTION IN LIMINE NO. 5: Collective bargaining agreement, union matters, future DHS employment, and the lack of progressive discipline are inadmissible under FRE 408.**

Plaintiff lists her collective bargaining agreement as Exhibit 1. After her termination, plaintiff filed a grievance through her labor union alleging that DHS "violated the Collective Bargaining Agreement when they imposed discipline on the grievant without just cause. The decision to dismiss the grievant was not warranted and there is no justification for the discipline. Further, proper disciplinary process was not followed." Cite Grievance, p. 1. Upon review of the

---

[5] Attachment 7, BAC-PROD-002360

[6] (Emphasis added). Attachment 8, BAC-PROD-002358

[7] Attachment 9, Plaintiff-000004.

Page 4 -   DEFENDANTS' MOTION IN LIMINE
          VAN/cbh/9988316-v1
                                    Department of Justice
                                    1162 Court Street NE
                                    Salem, OR 97301-4096
                                    (503) 947-4700 / Fax: (503) 947-4792

grievance, Oregon Department of Administrative Services found "The collective bargaining agreement does not require that all listed forms of progressive discipline be applied in sequence for every case in which progressive discipline is used. The offense was of such a serious nature that the severe penalty of dismissal was justified."[8] DHS and plaintiff settled "all grievance claims or potential grievance claims."[9] As part of this agreement, plaintiff received back pay through February 2019. Plaintiff agreed not to seek employment with DHS or OHA.[10]

Compromise offers and negotiations are inadmissible to "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." FRE 408(a). FRE 408 includes "conduct or a statement made during compromise negotiations about the claim[.]" By virtue of the settlement agreement, the lack of progressive discipline has already been addressed, settled, and compensated for. The union grievance process, the lack of progressive discipline, "any potential grievance claims"[11], and plaintiff's agreement never to seek future employment with DHS or OHA are all covered in the settlement agreement. Plaintiff cannot present evidence, argument, or seek damages for any of those topics now that she has been duly compensated. These matters are inadmissible under FRE 408.

**MOTION IN LIMINE NO. 5: Shamus Cooke**

Plaintiff has named Shamus Cooke as a witness, a DHS union steward.[12] Cooke worked in a different branch than the branch where Buccholtz and plaintiff worked.[13] Cooke did not work for Buccholtz, and therefore has no personal knowledge of plaintiff's interactions with

---

[8] Attachment 10, DAS Grievance Response, BAC-031-034.
[9] Attachment 11, Settlement Agreement, ¶ 10.
[10] Attachment 11, Settlement Agreement, ¶ 5.
[11] Attachment 11.
[12] Attachment 4, Decl. Cooke, ¶ 2.
[13] *Id.* at ¶ 3.

Page 5 -   DEFENDANTS' MOTION IN LIMINE
         VAN/cbh/9988316-v1

Buccholtz.[14] Cooke never was a co-worker of plaintiff's.[15] Cooke has no first-hand knowledge about interactions or events in the Beaverton Branch office relating to this lawsuit.[16] Cooke

> [a]ssist[ed] with her Union grievance process pursuant to the Collective Bargaining Agreement. That grievance and arbitration were about whether Ms. Bacon's dismissal violated the Collective Bargaining Agreement due to lack of just cause or progressive discipline. Accordingly, my knowledge about the events surrounding Ms. Bacon's dismissal is limited to my participation in the grievance process which resulted in an arbitration settlement agreement. Based on these circumstances, I believe my knowledge of the event surrounding Ms. Bacon's dismissal falls within what is covered by the arbitration settlement agreement[.][17]

Defendants therefore move in limine to strike Cooke as a witness under FRE 602 (need for personal knowledge) and 408 (compromise offers and negotiations).

**MOTION IN LIMINE NO. 6: Chuck Anderson, Robert Rookhuyzen and Ex. 35, 51, and 5**

Plaintiff named Anderson and Rookhuyzen as witnesses and attaches text messages between herself and Anderson as an exhibit (Plaintiff's Exhibit 35). Anderson and Rookhuyzen are police officers who worked with plaintiff while she was at DHS. Both witnesses wrote letters of support on plaintiff's behalf during the pre-dismissal proceedings (Plaintiff's Exhibit 51 and 52). DHS identified a specific list of cases that she fell short on; if Anderson and Rookhuyzen did not work with her on those specific cases, then their general impressions of plaintiff's professional aptitude is improper character evidence under FRE 404(a)(1): "*Prohibited uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." (Italics in original). The pre-dismissal letter contains the things Tracy Garcia relied upon in dismissing plaintiff from state service. It is unclear whether Anderson and Rookhuzyen intend to testify to specific instances of plaintiff's conduct that do not relate to the pre-dismissal letter. FRE 405(b).

---

[14] *Id*. at ¶ 3.

[15] *Id*.

[16] *Id*.

[17] *Id*. at ¶ ¶ 4-6.

Page 6 - DEFENDANTS' MOTION IN LIMINE
VAN/cbh/9988316-v1
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

Neither witness can speak with personal knowledge about what it was like working at DHS. FRE 602. Neither witness personally observed Buccholtz's treatment of plaintiff. Anything plaintiff told them about her DHS experiences, including Exhibit 35, is inadmissible hearsay. Merely pointing to their letters of recommendation as evidence of what they thought of plaintiff (Exhibits 51 and 52) is hearsay. Even if both witnesses were to testify that plaintiff was the best caseworker they had ever seen, that is not probative of the claims before the jury. Defendants therefore move in limine pursuant to FRE 401 and 403.

**MOTION IN LIMINE NO. 7: OFLA/FMLA retaliation**

This Court dismissed Plaintiff's Claim Two, Count Two against defendant Buccholtz. Dkt # 54, p. 9. This Court concluded that there is no OFLA retaliation claim against DHS. *Id*. at 9-10. Plaintiff should be barred from presenting evidence or argument concerning retaliation for taking OFLA or other protected leave.

**MOTION IN LIMINE NO. 8: Damages curtailed by prior settlement agreement.**

Plaintiff signed a settlement agreement in which she received back pay from November 4, 2017 (the day after her termination) to February 26, 2019.[18] DHS deducted PERS contributions for the timeframe of November 2017-February 2019. DHS agreed to reimburse plaintiff for up to $24,000 in medical expenses "incurred for treatment incurred for medical treatment or procedures occurring on or between November 4, 2017 and April 30, 2019."[19] Plaintiff obtained reimbursement for medical treatment. Accordingly, any recovery for medical treatment or lost retirement savings must exclude compensation plaintiff has already received through settlement. In other words, plaintiff cannot double recover for damages incurred on or before February 26, 2019.

---

[18] Attachment 11, DHS Settlement Agreement, ¶ 2.

[19] *Id*. at ¶ 3.

Page 7 -   DEFENDANTS' MOTION IN LIMINE
VAN/cbh/9988316-v1
           Department of Justice
           1162 Court Street NE
           Salem, OR 97301-4096
           (503) 947-4700 / Fax: (503) 947-4792

**MOTION IN LIMINE NO. 9: Whistleblowing on anything other than Durbin or Fuentes**

Summary judgment proceedings discussed alleged whistleblowing reporting of the conduct of DHS employees Jonica Durbin and Miguel Fuentes. Dkt # 54, p. 11. No other alleged whistleblowing should be raised at this late juncture. In other words, plaintiff cannot move the goalposts by alleging new forms of whistleblowing after years of litigation. Defendants therefore move in limine pursuant to FRE 401 and 403.

**MOTION IN LIMINE NO. 10: Redaction of child names**

Several exhibits contain unredacted personal identifiers for minor children. All exhibits (from all parties) should be redacted.

**MOTION IN LIMINE NO. 11**: **Plaintiff's Exhibit 56**

Plaintiff created Exhibit 56 to interpret and summarize her responses to the cases at issue in the fact-finding. Upon information and belief, this was not a document that plaintiff shared with DHS before her dismissal from state service on November 3, 2017. This document is therefore not probative of plaintiff's claims under FRE 401 and 403. This document is hearsay and further appears to have been created for the purposes of this litigation. It should be stricken. Plaintiff can testify to her impressions without presenting this exhibit.

**MOTION IN LIMINE NO. 12: Barring evidence of, or recovery for, damages allegedly caused as a result of the litigation.**

Defendants move this court for an order to exclude any evidence of, and to preclude any recovery for, damages that plaintiff allegedly incurred as a result of the litigation. Exclusion is proper because even if plaintiff incurred damages "from the bringing of the legal proceedings," those damages are not compensable. See School District No. 1 v. Nilsen, 271 Or 461, 485, 534 P2d 1135 (1975). For example, plaintiff's counseling records repeatedly discuss stress caused by plaintiff's deposition or other aspects of the legal proceedings brought by plaintiff, none of which is recoverable, and any mention of such stress is irrelevant to plaintiff's claims, not admissible, and confusing to the jury. OEC 401; OEC 402; OEC 403.

Page 8 -    DEFENDANTS' MOTION IN LIMINE
    VAN/cbh/9988316-v1
                    Department of Justice
                    1162 Court Street NE
                    Salem, OR 97301-4096
                    (503) 947-4700 / Fax: (503) 947-4792

**MOTION IN LIMINE NO. 13: Requiring plaintiff's experts or treaters to bring files to court.**

Defendants move the court for an order requiring any experts or treating medical or mental health professionals to bring their complete files to court for defendant's review immediately following the witness's testimony (prior to cross-examination). Once plaintiff's experts or plaintiff's treating medical or mental health professionals testify, any privilege is waived (also waived if plaintiff testifies), and defendant is entitled to review the complete contents of the witness's files. Defendant agrees to do the same.

**MOTION IN LIMINE NO. 14: Excluding Golden Rule and Plea of Poverty Arguments**

Defendants move the court for an order excluding any witness or attorney from asking members of the jury, any party, or any witness to "put themselves in the plaintiff's position," or any similar arguments or statements. *Hovis v. City of Burns*, 243 Or 607, 613, 415 P2d 29 (1966). Similarly, "pleas of poverty" are improper and should not be allowed, as they have long been held to be improper attempts to appeal to juror sympathy. Maynard v. Oregon Railroad Co., 46 Or 15, 78 P 983 (1904) (court held improper for plaintiff to testify he could not support his child), overruled on other grounds, *Fehely v. Senders*, 170 Or 457, 135 P2d 283 (1943); *Gallagher v. Portland Traction Co.,* 181 Or 385, 392-93, 182 P2d 354 (1947) (error to admit records reflecting plaintiff stating she was "absolutely unable to support herself"); *McCulley v. Homestead Bakery, Inc.,* 141 Or 460, 465, 19 P2d 226 (1933) (plaintiff's testimony that she was unable to pay medical bills was irrelevant and inadmissible).

**MOTION IN LIMINE NO. 15: Excluding Nonparty Witnesses from the Courtroom**

Defendants move the court for an order excluding nonparty witnesses from the courtroom. OEC 615.

**MOTION IN LIMINE NO. 16: Dee Wilson is unqualified to give expert testimony under FRE 403, 702-703**

    **1.    Plaintiff Bears Burden to Prove Admissibility of Proposed Expert Testimony**

Page 9 -   DEFENDANTS' MOTION IN LIMINE
VAN/cbh/9988316-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

The proponent of an expert's testimony bears the burden of proving its admissibility. In particular, the proponent of the testimony must prove its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592 n. 10 (1993).

2. **Trial Judge's Important "Gatekeeper" Role for Proposed Expert Testimony**

In general, "federal district courts have the power to exclude evidence in limine pursuant to their inherent authority to manage trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). In *Daubert v. Merrell Dow*, 509 U.S. at 589, the Supreme Court described the trial judge as a "gatekeeper" who must ensure that expert testimony is relevant and reliable. The Supreme Court recognized that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Id.* at 586 (internal citations omitted). Therefore, a judge may limit or exclude an expert's testimony if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403, 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (holding *Daubert* gatekeeping requirement that trial judge ensure expert testimony is relevant and reliable applies to all expert testimony, not just scientific testimony); *Jinro America, Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001); *McKeown v. Paul Revere Life Ins. Co.*, 2009 WL 1491181, *2-3 (D. Or. (Mosman, J.) May 26, 2009).

3. **Expert Testimony Must Be Reliable and Relevant to Be Admissible**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. In order to be admissible under Rule 702, an expert's testimony must be relevant and reliable. Rule 702 permits a qualified expert to present testimony that "will assist the trier of fact" in understanding the evidence or in determining a factual issue, so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R.

Page 10 - DEFENDANTS' MOTION IN LIMINE

VAN/cbh/9988316-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

Evid. 702 (emphasis added); *Daubert v. Merrell Dow*, 509 U.S. at 593-95. "In short, an expert's conclusion must meet the 'trilogy of restrictions on expert testimony: qualification, reliability and fit.'" *In re Human Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 655 (D. N.J. 2008) (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)). Rule 702 codifies the requirements set forth in *Daubert* and subsequent Supreme Court decisions. In *Kumho Tire*, the Supreme Court recognized Rule 702 and Daubert required relevance and reliability for all expert testimony: Rule 702 "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility," and requires "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*); *see also General Elec. Co. v. Joiner,* 522 U.S. 136 (1997). As noted above, the trial judge bears the responsibility of "gatekeeper" to ensure "that an [e]xpert's testimony both rests on a *reliable foundation* and is *relevant* to the task at hand." *Daubert v. Merrell Dow,* 509 U.S. at 597 (emphasis added). This inquiry requires "a preliminary assessment whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93.

### 4. Expert Testimony Must Be Reliable

Reliable testimony must be grounded in the knowledge and experience applicable in the relevant discipline and must signify knowledge beyond "subjective belief or unsupported speculation." *Daubert v. Merrell Dow,* 509 U.S. at 590. The court's analysis focuses on the methodology underlying an expert's testimony, rather than the expert's ultimate conclusions. *Daubert v. Merrell Dow,* 509 U.S. at 595; *Primiano v. Cook,* 598 F.3d 558, 564 (9th Cir. 2010). When the opinion is based on data, a methodology, or studies that are inadequate to support the conclusions reached, *Daubert* and Rule 702 require exclusion of the unreliable opinion testimony. *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 266 (2nd Cir. 2002).

In this regard, the trial judge should undertake "a rigorous examination of the facts on which the expert relies, the methodology by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* at 267 (emphasis

Page 11 - DEFENDANTS' MOTION IN LIMINE

VAN/cbh/9988316-v1
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

added). The expert's conclusions must be "supported by good grounds for each step in the analysis." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994). "[A]ny step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *Id.* (emphasis omitted).

### 5. Expert Testimony Must Be Relevant and Not a Legal Opinion or Conclusion

Under Rule 702, expert testimony also must "assist the trier of fact to understand the evidence or to determine a <u>fact</u> in issue," which "goes primarily to relevance." *Daubert v. Merrell Dow,* 509 U.S. at 591 (emphasis added). Relevant expert testimony "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow*, 43 F.3d 1311, 1315 (9th Cir. 1995) (*Daubert II*). To be relevant, expert testimony must have some bearing on <u>factual</u> issues in dispute and be "sufficiently tied to the facts of the case so that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow,* 509 U.S. at 591-92 (emphasis added). An expert's testimony must assist the trier of fact and relate to, or "fit," the underlying facts of the case. *Id.* at 591; s*ee also Contini v. Hyundai Motor Co.*, 876 F. Supp. 540, 542 (S.D.N.Y. 1995) (meaning of statutory standards "should not be a subject for expert testimony before the jury").

It has long been the rule that an expert witness may not offer legal opinions or legal conclusions. *Marx & Co. v. The Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2nd Cir. 1977) (trial court erred in allowing expert to opine on the legal meaning of contract terms and other questions of law); *see also Loeb v.Hammond*, 470 F.2d 779, 781 (7th Cir. 1969) (attorney witness properly precluded from offering opinion testimony on the legal significance of the parties' conduct).

> The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court.

*Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994); *see also Brand v. Mazda Motor Corp.*, 978 F. Supp. 1382, 1392 n. 10 (D. Kan. 1997) ("[t]he meaning of [ ] regulatory provisions is a matter for the court, not the jury, to decide."); *Contini v. Hyundai*

Page 12 - DEFENDANTS' MOTION IN LIMINE
VAN/cbh/9988316-v1                    Department of Justice
                                      1162 Court Street NE
                                      Salem, OR 97301-4096
                                      (503) 947-4700 / Fax: (503) 947-4792

*Motor Co.*, 876 F. Supp. 540, 542 (S.D. N.Y. 1995) (the meaning of federal standards "should not be a subject for expert testimony before the jury"); *Hayes v. MTD Products, Inc.*, 518 F. Supp. 2d 898, 901 (W.D. Ky. 2007) (excluding testimony of former CPSC commissioner because his "report at many points deviates from opinions . . . to legal conclusions"). The Sixth Circuit has admonished that:

> testimony offering nothing more than a legal conclusion – i.e., testimony that does little more than tell the jury what result to reach – is properly excludable under the Rules. It is also appropriate to exclude "ultimate issue" testimony on grounds that it would not be helpful to the trier of fact.

*Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) (quoting *U.S. v. Sheffey*, 57 F.3d 1419, 1426 (6th Cir. 1995)); *see also Shahid v. City of Detroit*, 889 F.2d 1543, 1547-1548 (6th Cir. 1989); *In Re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 558 (S.D. N.Y. 2004) ("testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible and may not be made so simply because it is presented in terms of industry practice."); *Adesina v. Aladan Group*, 438 F.Supp.2d 329, 347-48 (S.D. N.Y. 2006) (excluding expert testimony that FDA employees violated federal government service code of ethics). The Eighth Circuit held it was an abuse of discretion to allow testimony of an expert in police practices and procedures in a civil rights action arising out of an arrest because the only issues in the case were questions of law regarding probable cause and qualified immunity, whereas the expert's testimony was not fact-based but impermissible statement of legal conclusion. *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995).

Moreover, no witness is permitted to give testimony that interprets the law for the jury, applies law to facts, provides their own legal conclusions or instructs the jury on the law. *Nationwide Transport Finance v. Cass Information Systems, Inc.,* 523 F.3d 1051, 1058-60 (9th Cir. 2008); *F.D.S. Marine, LLC v. Brix Maritime Co.,* 211 F.R.D. 396, 400 (D. Or. 2001). Testimony on whether actions of a party complied with particular federal or state regulations, as well as the meaning and applicability of those regulations, is inadmissible. *Music Sales Corp. v. Morris,* 73 F.Supp.2d 364, 381 (S.D. N.Y. 1999); *United Phosphorous, Ltd.* v. *Midland*

Page 13 -  DEFENDANTS' MOTION IN LIMINE
VAN/cbh/9988316-v1
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

*Fumigant, Inc.,* 173 F.R.D. 675, 687-88 (D. Kan. 1997). "[T]he testimony of an expert on matters of domestic law is inadmissible for any purpose," rather these are matters for the judge and jury. *Music Sales,* 73 F. Supp. 2d at 381. Where relevant to the issues, "testimony of a legal expert is admissible as to the ordinary practices of those engaged in the business of law, legal studies, or law-related fields, or as to trade customs and usages of those so employed" in the legal practice. *Music Sales,* 73 F. Supp. 2d at 381. But, "[w]hen expert testimony embodies legal conclusions, it exceeds the permissible scope of opinion testimony." *United Phosphorous,* 173 F.R.D. at 688. (citations omitted).

### 6. Expert Testimony Must Be Factual and is Subject to Rule 403 Exclusion

Expert testimony must rest on "good grounds, based on what is known," and "the court must ensure the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *McClellan v. I-Flow Corp.*, 710 F.Supp.2d 1092, 1100 (D. Or. April 29, 2010) (citing *Daubert* and *Kumho*).

Assuming an expert's testimony meets the foregoing requirements, an expert's testimony nevertheless may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *Jinro America, Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001).

## B. PLAINTIFF'S EXPERT IS UNQUALIFIED

### 1. Wilson's lack of experience at Oregon DHS or any other recent statewide child welfare office disqualifies him

Dee Wilson is an unemployed blogger.[20] He has not worked for a government child welfare office since 2004, when he left Washington's Division of Child & Family Services within the Department of Social & Health Services. *Id.* Wilson has experience as a CPS

---

[20] Attachment 12, Wilson Disclosures, pp. 1-5.

Page 14 -   DEFENDANTS' MOTION IN LIMINE
          VAN/cbh/9988316-v1
                                              Department of Justice
                                              1162 Court Street NE
                                              Salem, OR 97301-4096
                                              (503) 947-4700 / Fax: (503) 947-4792

caseworker, CPS supervisor, Area Administrator, Regional Administrator and training director in Washington State's child welfare system from 1978-2004. *Id*. A lot has changed since 2004. More recently, Wilson worked at Casey Family Programs until retirement in 2016. At Casey Family Programs, he "was involved in several reviews of child protection systems in several states or large cities around the country. Workload issues and challenges were a major consideration in these reviews." *Id*. at 3. It is unclear whether those reviews included reviews of Oregon child protection systems.

Wilson has never been qualified to testify as an expert witness in Oregon.[21] He has never worked at Oregon DHS. At best, he attended "neglect trainings"[22], "studied their system[.]", interacted with Oregon DHS employees, and read the SOS audit.[23] Wilson has not been a direct supervisor to caseworkers since 1989.[24] Wilson taught workload management and other topics in Washington, but not Oregon.[25]

Wilson has not been a Washington caseworker since 1985.[26] Washington DHS handled cases in the 1980s differently than how Oregon did in 2016-2017. Wilson conceded in deposition that the job of a caseworker has changed substantially since the 1980s.[27] Wilson explained: "when I was a caseworker, we could go out on a case and determine in a single visit that the kids were not at risk -- I had the complete power to close that case without supervisory review, nothing. I could basically triage my caseload using my own judgment and discretion."[28] Wilson testified that plaintiff "was dinged for things that we wouldn't have raised an eyebrow about in

---

[21] Attachment 13, Wilson Depo, p. 117.

[22] The last training Wilson attended in Oregon was a training on "chronic neglect" in 2008. Att. 12, Wilson Disclosure, Exhibit 1, p. 4.

[23] Attachment 13, Wilson Depo, pp. 115-117.

[24] Attachment 13, Wilson Depo, pp. 46-47, 112.

[25] Attachment 12, Wilson Disclosures, Exhibit 1.

[26] Attachment 13, Wilson Depo, p. 109.

[27] Attachment 13, Wilson Depo, pp. 110-111.

[28] Attachment 13, Wilson Depo, p. 110.

Page 15 -   DEFENDANTS' MOTION IN LIMINE
VAN/cbh/9988316-v1
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

Washington state from 1985 to 1989[.]"[29]  In short, the role and expectations of Washington caseworkers in the 1980s (and how supervisors should supervise them) differs substantially from that of Oregon caseworkers in 2016-2017.

Wilson is not qualified to opine on how plaintiff should have handled her caseload, or how Buccholtz should have supervised plaintiff. And yet, Wilson paradoxically claims that, despite 27 years' difference in time, difference in states, and differences in caseworker and supervisor roles and expectations, he testified that his job as a supervisor in the 1980s and Buccholtz's job in 2016-2017 is "much the same job."[30] Wilson is unqualified to render any expert opinion on the facts of this case.

2. **Excluding specific opinions on caseworker workloads**

Even if this Court finds Wilson qualified, specific opinions of Wilson should be excluded under *Daubert*. Wilson cannot reliably opine on workloads at Oregon DHS, because he did not understand the workload data (Oregon DHS CPS Assessments Caseload Summaries).[31] Wilson testified,

> So I looked at those reports, and initially I couldn't make heads or tails of them really, and I didn't really feel that they were very informative. They weren't helpful… the data reports were not informative. They didn't cast any light on whether the events that occurred in Oregon with Jennifer were reasonable or not or --you know, so I couldn't make head or tails of the data stuff when I looked at it initially.[32]

Wilson testified "the data is pretty worthless in terms of comparing people on any type of performance metric here".[33]  Wilson's opinions on plaintiff's workload and workload issues more generally is unreliable and should be stricken. This includes, for example, whether plaintiff was further behind in timely completing her work than other caseworkers. Wilson's opinion on

---

[29] Attachment 13, Wilson Depo, p. 114.

[30] Attachment 13, Wilson Depo, p. 113.

[31] Attachment 12, Wilson Depo, pp. 61, 71; Attachment 12, Wilson Disclosures, Exhibit 2.

[32] Attachment 13, Wilson Depo, pp. 62-63.

[33] Attachment 13, Wilson Depo, p.118

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

caseworker workloads is unreliable and lacks foundation. When the expert's opinion is based on data, a methodology, or studies that are inadequate to support the conclusions reached, Daubert and Rule 702 require exclusion of the unreliable opinion testimony. *Amorgianos*, 303 F.3d at 266. The expert's conclusions must be "supported by good grounds for each step in the analysis." *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d at 745. "[A]ny step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible." Id. (emphasis omitted).

### 3. Excluding Opinion on court cases

Wilson has never worked on court cases in the state of Oregon. Indeed, Wilson has not worked on court cases in the state of Washington since 1989.[34] He is unqualified and lacks foundation to give expert opinion on Oregon court cases, let alone plaintiff's court cases.

### 4. Excluding Opinion on personnel decisions

Wilson opines on Buccholtz's supervisory decisions, such as the imposition of mandatory overtime. That is not a claim before this Court and should be stricken. Wilson also opines about personnel decisions made in this case concerning "just cause" and progressive discipline.[35] For reasons set forth in a prior motion in limine, all evidence concerning progressive discipline must be barred because it has already been covered in the settlement between plaintiff and DHS. Even if this court denies that motion in limine, Wilson is unqualified to give expert opinion on personnel decisions. Wilson opines "Nothing in the documents and statistical reports I reviewed justified disciplinary action, much less termination of employment in Jennifer Bacon's case." But Wilson did not understand the statistical reports. Wilson did not review the transcripts for *both* fact-findings. Wilson did not read the pre-dismissal letter, or plaintiff's rebuttal to the pre-dismissal letter, or any other documents short of the dismissal letter.[36]

---

[34] Attachment 12, Wilson Expert Disclosure, p. 6.

[35] Attachment 12, Wilson Disclosure, p. 13-14.

[36] Attachment 13, Wilson Depo, Exhibit 2, p. 2.

Page 17 - DEFENDANTS' MOTION IN LIMINE

VAN/cbh/9988316-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

Moreover, Wilson has not been in a job position to directly supervise caseworkers since 1989. Discipline of Oregon DHS caseworkers is subject to a collective bargaining agreement unique to Oregon DHS.  It is unknown whether Washington's child welfare employees were unionized or enjoyed similar collective bargaining rights in the 1980s.  It is unknown whether Washington DHS conducted fact-finding meetings the same way as Oregon DHS did in 2016-2017. And, even if they did, the last time Wilson could have possibly participated in discipline of Washington caseworkers was in 2004, his final year of Washington state service in any capacity.

### 5. Excluding opinion of damages, caseworker morale and managerial bullying

Wilson states "Jennifer Bacon has been professionally and emotionally harmed by these events."[37]  We have other experts in this case to professionally opine on plaintiff's emotional state.  Wilson is not one of them.  He presents no foundation for his opinion of "professional" harm to plaintiff. This is speculation, not expert opinion.

---

[37] Attachment 12, Wilson Disclosures, p. 17.

Page 18 -   DEFENDANTS' MOTION IN LIMINE
VAN/cbh/9988316-v1
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792

Wilson opines on an "abuse of power evident in Jennifer Bacon's termination has potential far reaching effects on organizational culture and caseworker morale."[38] Wilson bases this opinion on the SOS audit.[39] Wilson evidently did not read the audit carefully enough to know that the auditors did not speak to witnesses to this case. He cannot extrapolate the auditor's findings of other DHS employees to the employees in this case. Wilson spoke with plaintiff several times, but he did not review the deposition transcripts for plaintiff or any of the other non-managerial employees deposed in this case. His opinions of "abuse of power", "caseworker morale" and "managerial bullying" are unreliable, speculative, and without foundation.

DATED September  13 , 2021.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

   *s/ Vanessa A. Nordyke*
VANESSA A. NORDYKE #084339
KENNETH C. CROWLEY  #883554
Senior Assistant Attorneys General
Trial Attorneys
Tel (503) 947-4700
Fax (503) 947-4792
Vanessa.A.Nordyke@doj.state.or.us
kenneth.c.crowley@doj.state.or.us
Of Attorneys for Defendants

---

[38] Attachment 12, Wilson Disclosure, pp. 18-19.

[39] Attachment 13, Wilson Disclosures, p. 19.

Page 19 -  DEFENDANTS' MOTION IN LIMINE
VAN/cbh/9988316-v1
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792